HINDS, Treasurer, Appellant, *v.* WILCOX, Executrix, Respondent.

[No. 1252.]

[Submited November 17, 1898. Decided December 19, 1898.]

*Inheritance Tax Law—Construction.*

Inheritance Tax Law, Sec. 1 (Laws of Montana, 5th Sess. p. 83), provides that all property within the State passing by will, other than to a decedent's father, mother, husband, wife, etc., shall be subject to a tax of $5 on every $100 of its market value; that when the beneficial interest of any personal property passes to any father, mother, husband, wife, etc., the rate of tax shall be $1 on every $100 of its market value; and that in all other cases the rate shall be $5 on every $100 of the market value of all property, provided that any estate of less than $500 valuation shall not be subject to the tax. *Held,* that real estate devised by testator to his widow is not subject to the tax.

*Appeal from District Court, Silver Bow County; John Lindsay, Judge.*

ACTION by Thomas R. Hinds, Treasurer, against Clara M. Wilcox, Executrix. There was a judgment for defendant, and plaintiff appeals. Affirmed.

*C. B. Nolan, Attorney General,* for Appellant.

*W. W. Dixon, Thompson Campbell, Wm. Scallon* and *J. K. McDonald,* for Respondent.

HUNT, J.—Suit to collect taxes alleged to be due under the inheritance tax law of the State.   J. B. Wilcox died in December, 1896, leaving real property situate in Butte City. Clara M. Wilcox, widow of the deceased and executrix, refused to pay the tax, upon the ground that there was no personal property belonging to the estate of the deceased, and consequently no inheritance tax was due.   The estate, after deducting the debts, is of a clear market value of less than $7,500.   The District Court ruled that no tax could be collected under the law referred to.   The State appeals.

The statute bearing upon this controversy was passed in 1897, and is entitled "An act to establish a tax on direct and collateral inheritances, bequests and devises, to provide for its collection and direct the disposition of its proceeds." (Laws of Montana, Fifth Sess. p. 83.)

Section 1 of the law reads as follows:   "After the passage of this act, all property which shall pass by will or by the interstate (intestate?) laws of this State, from any person who may die, seized or possessed of the same, while a resident of this State, or if such decedent was not a resident of this State at the time of his death, which property, or any part thereof, shall be within this State, or any interest therein or income therefrom, which shall be transferred by deed, grant, sale or gift made in contemplation of the death of the grantor or bargainor, or intended to take effect in possession or enjoyment after such death to any person or persons, or to any body politic corporate, in trust or otherwise, or any property, which shall be in this State or the proceeds of all property outside of this State, which may come into this State, and which may be or should be distributed in this State to any such heirs, devisees or legatees, by reason whereof any person or corporation shall become beneficially entitled in possession or expectancy to any such property, or to the income thereof, other than to or for the use of his or her father, mother, husband, wife, lawful issue, brother, sister, the wife or widow of the son, or the husband of a daughter, or any child or children adopted as such in conformity with the laws of the State

of Montana, and any lineal descendant of such decedent born in lawful wedlock, shall be and is subject to a tax of five dollars on every hundred dollars of the market value of such property, and at a proportionate rate for any less amount, to be paid to the treasurer of the proper county hereinafter defined for the use of said county and State in the proportions hereafter stated; and all administrators, executors and trustees shall be liable for any and all such taxes until the same have been paid as hereinafter directed.    When the beneficial interests to any personal property. or income therefrom shall pass to or for the use of any father, mother, husband, wife, child, brother, sister, wife or widow of the son, or the husband of a daughter, or any child or children adopted as such in conformity with the laws of the State of Montana, or to any person to whom the deceased, for not less than ten years prior to death, stood in mutually acknowledged relation of a parent, or to any lineal descendant born in lawful wedlock; in every such case the rate of tax shall be one dollar on every hundred dollars of the clear market value of such property, and at and after the same rate for every less amount, provided, that an estate which may be valued at a less sum than seventy-five hundred dollars shall not be subject to any such tax or duty. In all other cases the rate shall be five dollars on each and every hundred dollars of the clear market value of all property and at the same rate for any amount, provided, that an estate which may be valued at a less sum than five hundred dollars shall not be subject to any such duties or tax, provided further, that said tax shall be levied and collected upon the increase of all property arising between the date of death and the date of the decree of distribution, and upon all estates which have been probated before, and shall be distributed after the passage and taking effect of this act.''

The contention of the Attorney General in behalf of the State is that the law has imposed a tax upon the privilege to take real property passing by inheritance or devise to the wife or others, designated by the Attorney General as ''direct heirs,'' when the estate is valued at $500 or more.   The re-

spondent, on the other hand, maintains that where the estate exceeds $500 in value, and descends or is devised to father, mother, husband, wife, child, brother, sister, wife or widow of the son, or the husband of a daughter, or any adopted child or children, or to any person to whom deceased for not less than ten years prior to death stood in mutually acknowledged relation of a parent, or to any lineal descendant born in lawful wedlock, no tax whatever can be levied on the right to take real property so descending or devised.

Between these several contentions we have found no little difficulty in reaching a satisfactory result, inasmuch as the section quoted above, upon which a decision must rest, is uncertain in its application, while its ambiguities admit of several constructions.

To dissect the statute, its several parts should be first separated, in order to arrive at its inclusions as well as its exemptions. Proceeding in this manner, there is a part which we may conveniently designate as (a), providing as follows: "(a) After the passage of this act, all property which shall pass by will, * * * which property * * * shall be within this state, * * * other than to or for the use of the decedent's father, mother, husband, wife, lawful issue, brother, sister, the wife or widow of the son, or the husband of the daughter, or any adopted child, and any lineal descendant of the decedent born in lawful wedlock, * * * shall be and is subject to a tax of five dollars on every hundred dollars of the market value of such property."

Here we observe provision for the taxation of "all property" passing by the means specified, except that devolving upon the decedent's father, mother, husband, wife, lawful issue, brother, sister, and others closely connected with the decedent in the line of descent. The exemptions to property passing to the favored persons are extended far down the line by the words "lawful issue," but are nevertheless especially made; and the property of such persons cannot be the basis for taxation at all, unless this paragraph of the law is modified by subsequent words or clauses, or unless the interests so

passing are elsewhere enumerated as subject to taxation. The inclusions are, however, very comprehensive. Realty and personal property passing to strangers or to certain relations, as, for example, real or personal property passing to an uncle or aunt, great-uncle or great-aunt, grandfather or grandmother, great-grandparents, or others in the ancestral line, shall bear its burdens. Bearing in mind now that we have the explicit exceptions from the liability imposed upon "all property" passing as mentioned, let us proceed and ascertain what, if anything, is to be levied upon the interests of these excepted and favored heirs or legatees.

Resuming, then, the text of the law, we directly encounter a paragraph of the section which we shall call (b), providing as follows: "(b) When the beneficial interests to any personal property or income therefrom shall pass to or for the use of any father, mother, husband, wife, child, brother, sister, wife or widow of the son, or the husband of a daughter, or any child or children adopted, * * * or to any lineal descendant born in lawful wedlock; in every such case the rate of tax shall be one dollar on every hundred dollars of the clear market value of such property, * * * provided that an estate which may be valued at a less sum than seventy-five hundred dollars shall not be subject to any such tax or duty."

This paragraph (b) pertains exclusively to property passing to those excluded from the operation of the first paragraph, and is the only provision thus far encountered under which any of such favored persons are brought within the operation of the law at all. And, in subjecting the beneficial interests passing to these favored ones, the law lays a duty upon the clear market value of their personal property only, thus wholly excluding any tax upon any beneficial interests in realty passing to them. Furthermore, the beneficial interests, even to personalty passing to these favored ones, shall not be taxed if of a clear market value of less than $7,500. Thus, there is a provision by which all of the persons exempted in paragraph (a), even though closely related to decedent, are obliged to pay an inheritance tax, though a much lighter one, and upon

:fewer classes of property, than that which those not so related must pay; and such favored persons shall not be taxed at all, unless the value of the estate they may take equals or ·exceeds $7,500. The object of paragraph (b) was, evidently, to deal leniently with those who are generally regarded as having .a sort of moral right to take an estate of a near relative, and yet to require of even them, if they take any considerable ;sum, some contribution for the privilege recognized or be-;stowed upon them by the law. So far as we have gone, too, real estate passing to such heirs is not to be taxed, because not mentioned in the paragraph dealing with property passing to these favored persons.

Moving on with the text, we come to a paragraph to be ·designated (c), which is as follows: "(c) In all other cases the rate shall be five dollars on each and every hundred dollars of the clear market value of all property and at the same rate for any amount, provided, that an estate which may be valued at a less sum than five hundred dollars shall not be subject to any such duties or tax," etc.

Taking up this paragraph (c), without considering the proviso for the present, we find it to be a kind of a drag-net whereby any species of property, real or personal, passing by any method by which one may take property from another at his death, and possibly not contemplated in paragraph (a), to any person or persons other than those embraced in the exceptions of paragraph (a) and the inclusions of paragraph (b), is liable to the payment of tax at a specified rate of five dollars on each and every hundred dollars of the clear market value.

Paragraph (c), under discussion, in our opinion, is to be read in connection with paragraph (a). The first clause of (c) was designed to impose a tax wherever paragraph (a) did not impose it. There may be no instances to which it can apply, except, perhaps, where property passes by escheat; but, if in administering the law any shall arise, paragraph (c) was meant to include them and to fix the tax. The whole system of inheritance taxes was novel to the State when this law was en-

acted, and in abundant, or superabundant, caution, the Legislature, in its disposition to let no estates escape, unless especially excepted, provided by paragraph (c) for all other cases not already specifically enumerated in paragraph (a).

We can find nothing in paragraph (c), though, which warrants us in holding that the real property passing to the beneficiaries named in paragraph (b) is to be included in the tax. It seems to us that the legislature, by expressly including personalty only, carefully avoided taxing real property passing to those favored by the law, and we are not authorized to insert what they omitted.

It is unreasonable to say that this paragraph (c) meant to tax real estate passing to those mentioned in paragraph (b), yet to exempt personal property passing to the same persons, if under a value of $7,500. The palpable injustice of such a construction is apparent. It would, as an example, require the wife of a decedent, who has left nothing except a home worth, say, $600, to pay a tax of $30, while the wife of a decedent who owned no real estate, but who left $7,499.99 in money in bank, would not have to pay a cent. In the one instance the wife would often have difficulty in borrowing the money without hardship and inconvenience, while in the other no tax whatever would be paid, although there would be a large sum of available money on hand wherewith it could be.

The proviso of paragraph (c) that an estate which may be valued at a less sum than $500 shall not be subject to a tax, when read in connection with paragraph (a), is a general exemption from the operation of the law of all small estates valued at less than $500, whether of real or personal property, and which would otherwise be liable to taxation under the provisions of paragraph (a) and the first clause of paragraph (c). Paragraph (b) being complete in itself, it is in no way qualified or limited by paragraph (c).

These several results, as we have reached them, seem to be more in accord with the letter and spirit of the law than any others which in our deliberations we have considered; hence we adopt them as the proper construction of the law, respect-

fully observing, however, that section 1 of the law is a fitting subject for further legislation, by which its construction may be simplified.    The order appealed from is affirmed.

PEMBERTON, C. J., concurs.

PIGOTT, J.—I concur in the foregoing opinion, as well as in the result announced.

The judgment ought to be affirmed for a reason not stated in the opinion.    Testator, Wilcox, died in 1896, while the act imposing a tax upon the privilege of taking by succession or will was not passed until 1897.    At the time of his decease, every sane person over 18 years of age might dispose of all his estate by will, to take effect at his death.    The State thus granted to the testator the privilege of devising property, and to the beneficiaries named in the will the privilege of receiving it.    This privilege was not incumbered or charged with the burden of a tax at the time it was exercised. Before testator's death, the devisees had a mere privilege, which was revocable by law, but when the will took effect the mere pre-existing privilege was merged into a right.    Then it was, if ever, that the right to take vested and became property.    (*Brenham* v. *Story*, 39 Cal. 179; Black on Constitutional Law, 429; Cooley on Constitutional Limitations (6th Ed.) p. 439; Beach on Modern Equity Jurisprudence, Sec. 1045; Croswell on Executors and Administrators, Sec. 171; *Westervelt* v. *Gregg*, 12 N. Y. 202, 62 Amer. Dec. 160; *Ervine's Appeal*, 16 Pa. St. 256, 55 Am. Dec. 499; *Clarke* v. *McCreary*, 12 Smedes & M. 347; *Rock Hill College* v. *Jones*, 47 Md. 1; Secs. 1794, 1851, Civil Code.)    Vested rights must, of necessity, be protected from legislative interference, irrespective of constitutional checks and guards.    (*Andrews* v. *Russell*, 7 Blackf. 474; *Town* v. *Pace*, 25 Grat. 1.)    Section 1 of the Four teenth Amendment to the Federal Constitution, and Sections 3 and 27 of Article III of the Constitution of Montana, imply, if, indeed, they do not express, a prohibition against the power of the Legislature to enact a law whose effect would be the impairment of a vested right.    (*Westervelt* v. *Gregg, supra; Jones* v. *Robbins*, 8 Gray, 329; *Bank* v. *Okely*, 4 Wheat. 235;

Cooley on Constitutional Limitations, 354; *Osborn* v. *Nichol-son*, 13 Wall. 654; *Farrington* v. *Tennessee*, 95 U. S. 679; *Dash* v. *Van Kleeck*, 7 Johns. 477.) Taxes on successions and the privilege of taking under. wills are laid in diminution of a new capital, which now comes to the hands of persons on the death of the former owner. (Cooley on Taxation (2d Ed.) p. 30.) When the courts affirm the tax to be upon the privilege, they are speaking, not of successions in being or wills in effect before the act imposing the tax was passed, but of the revocable permission granted to succeed or take thereafter.

The power to tax includes the power to destroy. If the Legislature has power to levy a tax of 1 per cent. or 5 per cent. on a vested right, it has authority likewise to destroy the right by imposing a tax equal to the value of the property passing to the heirs or devisees. It is not a question of degree, but of power. The concession that the Legislative Assembly has power to subject to a tax the exercise of a vested and accrued right involves the further logical concession that it may, in the guise of taxation, impose a burden which will deprive the right of any value. Authority which permits a person to be deprived of his property by indirection is as much within the meaning and spirit of the constitutional limitation as where it attempts to do the same thing directly. (*Merrill* v. *Sherburne*, 1 N. H. 199, 8 Am. Dec. 52; *In re Handley's Estate*, 15 Utah, 212, 49 Pac. 829.)

The act, in terms, applies to all estates not distributed on March 4, 1897, and, it would seem, imposes the lien as of the day of the testator's death. Hence lands and chattels owned by a testator who died a score of years ago, and whose devisees did not secure a formal order of distribution, are now burdened with the tax created in 1897, but taking effect as a lien as of the year 1877; and such is the necessary operation of this act, as interpreted in *Gelsthorpe* v. *Furnell*, 20 Mont. 299, 51 Pac. 267, even though the devisees have long ago conveyed the land with full covenants of warranty. Many other examples might be given of cases in which the act would effectually impair the rights vested prior to 1897 in devisees and heirs and their vendees.

The foregoing is a mere outline of the reasons which impel me to the conclusion that the act, as applied to estates remaining undistributed when it took effect, disturbs and lessens the vested rights of heirs, devisees and legatees, thereby depriving them of property without due process of law, in violation of constitutional prohibitions, federal and state.

I am of the opinion, also, that the act is repugnant to the Fourteenth Amendment to the National Constitution, in that it denies to persons within the jurisdiction of Montana the equal protection of the laws. The act exempts from taxation estates under $500 in value in certain cases, and under $7,500 in others. An estate valued at $7,499.99 is exempted, but one of greater value is taxed, not only upon the excess above $7,500, but also upon the $7,499.99. For example, A.'s estate nets $7,499.99 in personal property passing to his widow; this is wholly exempt. B.'s estate nets $7,500, and his widow is also the sole beneficiary; this entire amount is taxed. The widow of B. pays $75 for the privilege of receiving $7,500, whereas the widow of A. receives but one cent less and pays nothing. Does the act deny to B.'s widow the protection it extends to A.'s? I think it does. In these United States, government is instituted for the equal protection and benefit of the people. Laws must likewise be for their equal protection and benefit. This principle finds expression in the first section of the Fourteenth Amendment to the Constitution of the United States, and its effect upon the powers of the states to impose taxes is considered in *Santa Clara Co.* v. *Southern Pac. Ry. Co.*, 9 Sawy. 165, 18 Fed. 385; *Railroad Tax Case*, 8 Sawy. 238, 13 Fed. 722, and *Gulf Railroad Co.* v. *Ellis*, 165 U. S. 150, 17 Sup. Ct. 255. The Supreme Court of Ohio, in *State ex rel. Schwartz* v. *Ferris*, 53 Ohio St. 314, 30 L. R. A. 218, 41 N. E. 579, had occasion to consider the precise question presented by the act of 1897, and held it obnoxious to the objection which I have just indicated. For these reasons I believe that *Gelsthorpe* v. *Furnell, supra*, was wrongly decided, and avail myself of the present opportunity to record my disapproval.