In re TOUHY'S ESTATE.

STATE et al., Respondent, *v.* PAUWELYN et al., Appellants.

(No. 2,410.)

(Submitted May 16, 1907. Decided May 27, 1907.)

[90 Pac. 170.]

*Inheritance   Tax—Statutes—Constitution—Power   of   Legislature.*

Inheritance Tax—Its Nature.
   1. An inheritance tax is not a tax upon the property itself, but is a duty or burden imposed by the state upon the privilege of acquiring property by inheritance.
Same—Power of Legislature.
   2. Since the privilege of receiving or taking property by inheritance is not a natural right, but a creature of the law, the legislature may

impose such burdens upon it as it sees fit, except so far as it is clearly restricted by the Constitution.

Same—Statutory Construction—Constitution.

3. *Held*, that the district court, under Act of March 4, 1897 (Laws, 1897, p. 83), properly fixed the amount of an inheritance tax,—where the property involved consisted of mines and mining claims, used for mining purposes exclusively,—at $5 per $1,000 of its appraised value, and that the constitutional provision limiting the basis or measure of value of this species of property, for ordinary taxation purposes, to the price paid the United States therefor (Const., Art. XII, sec. 3), does not apply to a tax imposed on the privilege of taking by will, succession or testamentary grant.

Same—On Increase of Property.

4. Testator died in 1893. The administration of his estate was pending in the district court until June, 1906, at which time distribution was about to be made. In 1897, the inheritance tax law (Laws 1897, p. 83) was approved, which provides, *inter alia*, "that said tax shall be levied and collected upon the increase of all property arising between the date of death and the date of the decree of distribution," etc. The appraiser, appointed in August, 1906, found that when the Act was approved, the gross value of the estate was $37,298.82, but that at the date of his report it had a value of $171,294.82. The court thereupon fixed the amount of tax to be paid, at the rate of $5 per $1,000, after deduction of indebtedness, costs, etc., on the value as found in 1897, and at the same rate on the increase since that time. *Held*, that the expression "increase of all property" includes as well augmentation in value as multiplication in kind, and that error was not committed in taxing the increase in value of the estate.

Same—Appealability of Order Fixing Amount of Tax.

5. *Quaere:* Is an order of the district court fixing the amount of an inheritance tax, under the provisions of the Act of March 4, 1897 (Laws 1897, p. 83), appealable?

*Appeal from District Court, Silver Bow County; Geo. M. Bourquin, Judge.*

PROCEEDINGS to fix the amount of inheritance tax on the estate of James Tuohy, deceased. From an order fixing the amount, Cyril Pauwelyn, executor, and others, appeal. Affirmed.

*Mr. W. Y. Pemberton, Mr. John B. Clayberg, Mr. T. J. Walsh, Mr. William Scallon, Mr. M. D. Leehy, Mr. John J. McHatton, Mr. John A. Coleman,* and *Messrs. Maury & Hogevoll,* for Appellants.

Citing: Cooley on Taxation, p. 669; *Clapp* v. *Mason,* 94 U. S. 591, 24 L. Ed. 212; *In re Line's Estate,* 155 Pa. St. 378, 26 Atl. 728; *Gelsthorpe* v. *Furnell,* 20 Mont. 310, 51 Pac. 267,

39 L. R. A. 170; *Linsly* v. *Bogert,* 67 N. Y. St. Rep. 653, 33 N. Y. Supp. 975; *Carr* v. *Tucker,* 42 Tex. 330; *Stringfellow* v. *Sorrels,* 82 Tex. 277, 18 S. W. 689.

*Mr. Albert J. Galen,* Attorney General, and *Mr. E. M. Hall,* Assistant Attorney General, for Respondent.

Citing: *In re Magee's Estate,* 32 Colo. 527, 77 Pac. 853; *In re Hickok's Estate,* 78 Vt. 259, 62 Atl. 725; *State* v. *Bazille,* 97 Minn. 11, 106 N. W. 93; *State* v. *Vinsonhaler* (Neb.), 105 N. W. 473; *Plummer* v. *Cole,* 178 U. S. 115, 44 L. Ed. 998, 20 Sup. Ct. 829; *Succession of Kohn,* 115 La. 71, 38 South. 898; *Succession of Levy,* 115 La. 377, 39 South. 37; *In re Jones,* 1 Redf. 266, 5 N. Y. Leg. Obs. 124; *Scottish-American Mortgage Co.* v. *Massie,* 94 Tex. 339, 60 S. W. 545.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

James Tuohy died testate in Silver Bow county on October 2, 1893. Under the terms of his will Cyril Pauwelyn was made executor and residuary legatee. With the exception of one lot in the city of Butte and a small amount of personal property, the estate consisted of interests in patented mining claims, which were, all but one not mentioned in the will, specifically devised to Daniel Shields and the appellants other than Pauwelyn. Soon after Tuohy's death Cyril Pauwelyn qualified as executor, and the administration of the estate has been pending in the district court of Silver Bow county.

On June 29, 1906, the court, in pursuance of the provisions of the Act of the Fifth Legislative Assembly approved March 4, 1897 (Sess. Laws 1897, p. 83), appointed an appraiser to ascertain the value of the assets of the estate, for the purpose of enabling it to fix the amount of the inheritance tax to be paid by the executor prior to final distribution among the devisees, the administration having at that time reached the point at which a distribution was about to be made. The ap-

praiser thereafter, on August 4, 1906, filed his report. From this it appears that at the time the Act above referred to was approved, the gross value of the estate was $37,294.82, but that at the date of the report it had a value of $171,294.82; the increase in value between the date of the passage of the Act and the date of the appraisement thus appearing to be $134,000. When the report was filed, the court, after notice to the parties interested, by order fixed the amount of tax to be paid by charging the value found on March 4, 1897, less the amount of indebtedness, cost and expenses of administration, at the rate of $5 per $1,000, and the $134,000 of increase in value at the same rate. Since the tax on the first valuation had not been paid within eighteen months after it became due—that is, after March 4, 1897—interest on the amount due at the rate of seven per cent from that date until the date of the order was added   The court's figures are the following:

Indebtedness, cost and expenses...................$30,514 00

Tax due March 4, 1897...........................$339 00
Interest at 7 per cent to date.........................225 43

Total ................... ....................    $564 43

Tax on increase after March 4, 1897...................$6,700 00

The amount so fixed the executor was directed to pay to the county treasurer. The correct difference between the value on March 4, 1897, to-wit, $37,394.82, and the amount of indebtedness, etc., $30,514, is $6,880.82. Taking this as the basis upon which the amount due on March 4, 1897, should have been calculated, and comparing the result with the amount fixed by the court, it will be seen that the result reached by the court is not correct; but the error is in favor of the appellants, and is not a matter of complaint.

At the time the order was made, Cyril Pauwelyn, the executor, and all the other legatees objected to the method pursued by

the court in ascertaining the amount of tax due, and reserved their exceptions; and from the order fixing the amount and directing its payment they have all appealed to this court. They make these two contentions: (1) The court erred in entering judgment for any tax at all, for that the entire property of the estate, at all times since March 4, 1897, has not been of a value in excess of $2,500, under the method of valuation prescribed for mining property by the Constitution. (2) The court erred in taxing the increase, there being no increase in property.

1. The state Constitution, section 3, Article XII, provides: "All mines and mining claims, both placer and rock in place, containing or bearing gold, silver, copper, lead, coal or other valuable mineral deposits, after purchase thereof from the United States, shall be taxed at the price paid the United States therefor, unless the surface ground, or some part thereof, of such mine or claim, is used for other than mining purposes, and has a separate and independent value for such other purposes, in which case said surface ground, or any part thereof, so used for other than mining purposes, shall be taxed at its value for such other purposes, as provided by law. * * * "

It is said by the appellants that this provision is mandatory, that no other basis or measure of value may be adopted for taxation for any purpose when the property to be taxed falls within the designation of "mines and mining claims" used exclusively for mining purposes, and that, had the court adopted this basis or measure, it would not have assessed any tax at all, since the value of the estate, after the payment of debts, costs and expenses, does not exceed $500.

There is no controversy but that all the real estate listed and valued in the inventory, except the city lot valued at $250, falls within the designation of "mines and mining claims," and that all of it is used for mining purposes exclusively. The area of all of it does not exceed fifty-five acres. If the position of appellants is correct, the tax could not in any event have been more than nominal. The fallacy of the contention, however,

is that it assumes that an inheritance tax is a tax levied upon the property itself, like taxes for ordinary revenue purposes. This theory is, under practically all the decisions, not correct. Such a tax is defined to be an "impost, duty or excise upon the privilege secured by law to devisees, legatees, grantees, heirs and personal representatives, of taking, holding and enjoying all property, real and personal, or any interest therein, passing by will, by intestate law, or by any grant or gift made *inter vivos* and intended to take effect at or after the death of the grantor." (27 Am. & Eng. Ency. of Law, 2d ed., 337.)

This court, in considering the nature of the imposition, in *Gelsthorpe* v. *Furnell*, 20 Mont. 299, 51 Pac. 267, 39 L. R. A. 170, said, through Mr. Justice Hunt: "The better view, as laid down by the authorities, is that a collateral inheritance or succession tax is a duty or bonus exacted in certain instances by the state upon the right and privilege of taking legacies, inheritances, gifts and successions passing by will, by intestate laws, or by any deed or instrument, made *inter vivos*, intended to take effect at or after the death of the grantor. The burden or the tax is not imposed upon the property itself, but upon the privilege of acquiring property by inheritance. In nearly all inheritance tax laws the statutes provide for appraising the property to be inherited, but the object of such valuation is not to tax the property itself. It is to arrive at a measure of price by which the privilege of inheritance can be valued." This view is so well established by the decided cases cited in the opinion that it is only necessary to refer to them. We cite, however, the following: *Plummer* v. *Coler*, 178 U. S. 115, 20 Sup. Ct. 829, 44 L. Ed. 998; *Estate of Stanford*, 126 Cal. 112, 54 Pac. 259, 58 Pac. 462, 45 L. R. A. 788; *In re Wilmerding*, 117 Cal. 281, 49 Pac. 181; *In re Magnes*, 32 Colo. 527, 77 Pac. 853; *In re Hickok's Estate*, 78 Vt. 259, 62 Atl. 724; *State ex rel. Foot* v. *Bazille*, 97 Minn. 11, 106 N. W. 93; *Succession of Kohn*, 115 La. 71, 38 South. 898; *Succession of Levy*, 115 La. 377, 39 South. 37; *State ex rel. Slabaugh* v. *Vinsonhaler* (Neb.), 105

N. W. 472; *Kochersperger* v. *Drake*, 167 Ill. 122, 47 N. E. 321, 41 L. R. A. 446.

Since the tax is imposed upon the privilege of receiving or taking property, and not upon the property itself, and since the privilege is itself not a natural right, but a creature of law, it follows as a corollary that, except so far as it is clearly restricted by the Constitution, the legislature may impose such burdens upon it as it may see fit. The legislature is not restricted in this regard by the provision of the Constitution requiring equality and uniformity in the levy of ordinary taxes upon property (Const., Art. XII, secs. 1, 11) ; nor, for the same reason, is its power restricted by the provision prescribing a maximum rate for state taxation (Id., sec. 9) ; nor, again, by the provision, invoked here, fixing the valuation of a certain class of property or those providing for exemptions.

In *Plummer* v. *Coler, supra,* it was held that a legacy of United States bonds is not exempt from the inheritance tax imposed by the laws of the state of New York, though the bonds are themselves exempt from taxation in any form for ordinary purposes by or under authority of any state. This conclusion was arrived at after a review of the decisions from many of the states. To the same effect are the decisions of the states generally. (See cases cited.) If specific exemptions from taxation for ordinary revenue purposes do not, under the theory of these cases, apply, it must necessarily follow that an arbitrary method of valuation provided for in the Constitution with reference to a certain class of property for ordinary purposes, does not include the privilege to take by will, succession or testamentary grant.

The first contention of the appellants must therefore be overruled.

2. The second contention turns upon the construction of the last proviso in the first section of the Act, which is as follows: "Provided further, that said tax shall be levied and collected upon the increase of all property arising between the date of

death and the date of the decree of distribution, and upon all estates which have been probated before, and shall be distributed after the passage and taking effect of this Act.''

It is urged by counsel that the use of the expression ''increase of all property'' clearly evinces the intention of the legislature to impose the tax upon the increase in case of those estates only, the property of which is of such a character as that it increases in kind, as, for instance, when it consists in whole or in part of live stock, such as sheep, cattle, etc.   It is said that the term ''increase,'' if given its ordinary popular meaning, can indicate no other intention, if it be borne in mind that section 4 of the Act specifically provides that the liability for the tax attaches as of the date of the death of the decedent.

The first section of the Act is somewhat ambiguous; but, as pointed out in *Hinds* v. *Wilcox*, 22 Mont. 4, 55 Pac. 355, it is clear that, with the exception of real estate passing directly to the father, mother, husband, wife, child, brother, or any of the other persons mentioned in this favored class, and subject to the exemptions specifically named, the legislature intended that the tax should be paid whenever any property, or interest therein, of any character, passes to those who take by testamentary disposition or under the laws of succession.   The measure of the tax is the clear market value of the property.   The latter portion of the section applies as well to estates in process of settlement at the date of its passage.   The fourth section provides that the tax, ''unless otherwise herein provided for,'' shall be due and payable at the death of the decedent, subject to the penalties provided for in the latter part thereof and in section 5.   Now, the expression ''unless otherwise herein provided for'' can have reference to no other provision in the Act than the provision in question, imposing a tax upon the increase of all property pending the administration, and to the deferred payment provided for in section 2 upon the class of interests therein enumerated.

While, speaking generally, the tax is due and payable as of the date of the death of the deceased, the latter portion of sec-

tion 1 clearly contemplates, as do also sections 4 and 5, that there will be necessary delays in the final distribution of estates, and in view of this fact, and the further fact that there may be increase in the assets to be distributed, that an additional tax shall be paid upon the increase. The value of the increase is to be ascertained and determined under the provisions of section 15, and the standard or measure must be the market value. This must be the result, or no meaning can be attached to the expression "upon the increase of all property arising between the date of death and the date of the decree of distribution." And the fact that the title to the devise or bequest vests at the death of the decedent, subject to a lien for the amount of the tax until paid, is of no moment; for, though this is so, yet, as pointed out in *Gelsthorpe* v. *Furnell, supra,* it vests subject to the control of the court, and the imposition of the tax upon the privilege to take, upon the final abdication of control by the court when distribution is ordered, in no wise impairs the value of the privilege.

This brings us to the question at issue: What significance must be assigned to the word "increase"? It is derived from the Latin verb "*cresco,*" which means to grow, and primarily means growth. By usage it has been extended to include augmentation by any process or from any cause. Webster's International Dictionary defines it as (1) an addition or enlargement in size, extent, quantity, number, intensity, value, substance, etc.; (2) that which is added to the original stock by augmentation or growth, produce, profit, interest; and (3) progeny, issue, offspring. The Century Dictionary defines it as (1) a growing larger in size, number, quantity, degree, augmentation, enlargement, extension, multiplication; and (2) the amount or number added to the original stock, or by which the original stock is augmented; increment, profit, interest, produce, issue, offspring. The first definition includes enlargement in value, as well as from other causes, and the second makes the term synonymous with the term "increment," which in turn is synonymous with the expression "increase in value." In popu-

lar parlance the term "increase" is as often used in the sense of increase in value as in any other. It is used in this sense in a statute of New York, requiring executors to account for the "increase" in the assets of the estate, and is made to include increase of the flock, increase from interest, increase from selling at a higher price than the appraised value in the inventory, or increase from property not embraced in the inventory. (*In re Jones*, 1 Redf. Sur. 263.)

Since the definition given to the term by the standard works includes as well augmentation in value as multiplication in kind, we conclude that the legislature used the term in a comprehensive, and not in a restricted, sense. We think this conclusion is supported, in a measure at least, by the consideration that any other construction would require the conclusion that the legislature intended to exempt from the imposition increment in case of all other property than live stock or such as is susceptible of increase in kind, whereas, the general intention of the statute is to make the imposition apply to the increase of all property, of whatever character and description.

We are of the opinion that the course pursued by the district court in determining the amount of the tax payable was proper, and that the order should be affirmed.

In the disposition of this case we have assumed that the order under consideration is appealable. By this assumption we do not care to be foreclosed, if at any time the question of its appealable character is presented. Let the order be affirmed.

*Affirmed.*

Mr. Justice Holloway and Mr. Justice Smith concur.