TILLIE ROZELL, Respondent, v. NORTHERN PACIFIC RAILWAY COMPANY, Appellant.

(167 N. W. 489.)

**Highway by prescription — or sufferance — abutting land — owner of — liability of — for obstructions or dangers — to travel — confined to beaten or traveled track.**

1. In the case of a highway by prescription or sufferance the liability of the owner of the abutting land for obstructions or other dangers to the travel thereon is as a rule confined merely to the beaten or traveled track.

**Real estate — owner of — use of by — ordinary care exercised by — injuries to traveler on abutting highway — damages for — not liable.**

2. Where the owner of real estate has exercised ordinary care in the use of

---

NOTE.—The question of liability of abutting owner for placing near highway object calculated to frighten horses is discussed in a note in 12 L.R.A. (N.S.) 1152, where it is stated that an owner of land has the right to use his property for every lawful purpose for which he may desire to use it, and is required to exercise only ordinary care in that use, in order to relieve him from liability for damages on account of injuries incidentally resulting to a traveler on the highway. This doctrine was applied in Piollet v. Simmers, 106 Pa. 95, 51 Am. Rep. 496, which is fully set out in the opinion in Davis v. Pennsylvania R. Co. 218 Pa. 463, 67 Atl. 777.

his property, he is not liable for damages incidentally resulting to a traveler on an abutting highway.

**Railway company — permit crossing on track — by highway — ordinary care ꞏꞏꞏ use — to keep crossing safe — highway not legally described or appropriated — when company liable for damages.**

3. Where a railway company permits a crossing of its tracks by a highway it must use ordinary care to make and keep the crossing safe for travel, and this even where the highway has not been regularly and legally described or appropriated. It is not liable, however, for accidents upon such highway which are indirectly occasioned by its use of its premises, in a manner which is not ordinarily and usually calculated to occasion danger.

**Things calculated to frighten horses — what are — determined how — courts — juries — opinion evidence — not necessary upon such question.**

4. Whether an article is or is not calculated to frighten horses is a question which is to be determined by the experiences, observations, and intellect of the courts and jury as applied to all the facts of the particular case, and opinion evidence need not be introduced thereon.

**Articles not dangerous — judicial notice — courts will take.**

5. The courts will take judicial notice of the nature and appearance of nail kegs, and that there is nothing in them which is intrinsically dangerous or usually calculated to inspire fright in a team of horses.

Opinion filed December 28, 1917. Rehearing denied April 30, 1918.

Action for personal injuries.

Appeal from the District Court of Billings County, Honorable *W. C. Crawford,* Judge.

Judgment for plaintiff. Defendant appeals.

Reversed.

*Watson, Young, & Conmy,* for appellant.

At the time of the occurrence of the accident of which complaint is here made, the railway crossing, or traveled road in question, had not been so used for twenty years, and not having continued for twenty years, the public had acquired no prescriptive right to the same as a highway. Burleigh Co. v. Rhud, 23 N. D. 362, 136 N. W. 1082.

In any event, it is doubtful whether the public could ever acquire anything more than the permissive right to use the crossing. Lincoln v. G. N. R. Co. (N. D.) 144 N. W. 713.

But assuming that we have here a highway by prescription, then such

highway is limited to the land actually used as a highway. "It is not necessary that a highway established by user should be of the statutory width of 4 rods. A highway by user becomes such as to the width and extent used." Wayne Co. v. Miller, 31 Mich. 447–449; Lyle v. Lesia, 64 Mich. 22, 31 N. W. 23; Scheimer v. Price, 65 Mich. 638, 32 N. W. 873; Kruger v. Le Blane, 70 Mich. 76, 37 N. W. 880; Kratt v. Lewis, 39 Mich. 7; McKay v. Doty, 63 Mich. 581, 30 N. W. 591; Gregory v. Knight, 50 Mich. 61, 64, 14 N. W. 700; Coleman v. Railroad Co. 64 Mich. 163, 31 N. W. 47; Wayne Co. Sav. Bank v. Stockwell (Mich.) 48 N. W. 175.

"Adverse use by the public for the period named in the Statute of Limitations will establish a highway by prescription, but the title will be confined to the very way traveled during the period." State v. Auchard (Mont.) 55 Pac. 361.

Relying for right of way on use, the right could not extend beyond the use. District of Columbia v. Robinson, 180 U. S. 100; Davis v. Bonaparte (Iowa) 114 N. W. 896.

To establish a highway by prescription, the use must be general, uninterrupted, and continuous for the full period of the statute, and then even the right only covers that part actually used. Code of 1873; Gray v. Haas, 98 Iowa, 504, 67 N. W. 394; State v. Mitchell, 58 Iowa, 567, 12 N. W. 598; Fountain v. Keen, 116 Iowa, 409, 90 N. W. 82.

But this crossing, or the land used therefor, was in use for private purposes long before the crossing or way was used, and the place where the accident occurred never became a part of a public thoroughfare. 1 Thomp. Neg. 1194; Arndt v. Thomas (Minn.) 100 N. W. 378.

Any right which the public acquired to use this road was subject to such uses of the property as the defendant was then making of it. The public takes the right of use of such a road subject to the necessary and proper uses of the defendant company in storing its property or keeping it safe, and to use materials thereon necessary for repairs, such as kegs of nails, etc. Davis v. Bonaparte, 114 N. W. 96; East Tennessee Tel. Co. v. Parsons, 159 S. W. 584; Bayard v. Standard Oil Co. (Or.) 63 Pac. 614.

When the highway depends solely for its establishment upon adverse and continuous user by the general public, its width and extent of servitude are measured and determined by the character and extent of the

user, for the easement cannot be broader than the user. Marchand v. Maple Grove, 48 Minn. 271, 51 N. W. 606; Paper Co. v. West, 58 Wis. 599, 17 N. W. 554; Bartlett v. Beardmore, 77 Wis. 356, 46 N. W. 494; Scheimer v. Price, 65 Mich. 638, 32 N. W. 873; Western R. Co. v. Alabama G. T. R. Co. 96 Ala. 272, 11 So. 483; Bank v. Stockwell, 84 Mich. 586, 48 N. W. 174; O'Donnell v. Chicago, M. & St. P. R. Co. 28 N. W. 464.

No property owner is liable in damages to a person whose horses are frightened by such objects—kegs of nails—as were here placed along the highway in the ordinary course of affairs. These objects were in their usual and customary place for use by the defendant company, in repair work, in the ordinary manner. The use of the ground and of the nails was incident to defendant's proper and lawful business, and intended to contribute to the safe maintenance and operation of its railroad. 33 Cyc. 185; Pittsburgh Southern R. Co. v. Taylor, 104 Pa. 306, 49 Am. Rep. 580.

"The substance of the doctrine is that the mere exercise of the right of obstruction for a lawful purpose imposes no liability to pay for damages resulting therefrom. It must be an unreasonable or a negligent exercise of the right, in order to impose liability." Piollet v. Simmers (Pa.) 51 Am. Rep. 500; Chicago, B. & Q. R. Co. v. Roberts (Neb.) 91 N. W. 708; Lake Erie & W. R. Co. v. Juday (Ind.) 49 N. E. 843; Witham v. Bangor & A. R. Co. (Me.) 52 Atl. 764; O'Donnell v. Chicago, M. & St. P. R. Co. 28 N. W. 464; Davis v. Penn. R. R. Co. 12 L.R.A. (N.S.) 1152, and note, 218 Pa. 463, 67 Atl. 777; Davis v. Penn. R. Co. 218 Pa. 463; O'Sullivan v. Knox, 178 N. Y. 565, 80 N. Y. Supp. 848; Chandler v. Illinois C. R. Co. (Ill.) 100 N. E. 152; Elliott, Railroads, 1264; Cook v. Rice Lake Mill. & Power Co. 146 Wis. 535, 32 L.R.A. (N.S.) 1225, 130 N. W. 953, 132 N. W. 346, Ann. Cas. 1912C, 458.

Such obstructions must be unusual and out of the line of necessary and reasonable use, and must show negligence. East Tennessee Tel. Co. v. Parson, 159 S. W. 584; Nichols v. Atkins, 66 Me. 402; Keith v. Easton, 2 Allen, 552; Simonds v. Maine Tel. & Tel. Co. 72 Atl. 175; Heist v. Jacoby, 98 N. W. 1060; Gilbert v. Flint & P. M. R. Co. 16 N. W. 868; Hebbard v. Berlin, 32 Atl. 229; Cleveland, C. C. & I. R. Co. v. Wynant, 17 N. E. 118; People v. Cunningham (N. Y.) 43 Am. Dec. 709; Malloy v. Griffey, 85 Pa. 275.

Where a special verdict is allowed for presentation to the jury, it is error for counsel to argue the cause to the jury generally. The argument must be confined to the matters covered by the special verdict. In such cases the jury are not to know how their answers will affect the general liability of the parties. Morrison v. Lee, 13 N. D. 599; Guild v. More, 32 N. D. 476; Snider v. Walsh Power Co. 120 Pac. 88.

*J. K. Swihart* and *Gallagher & Halliday,* for respondent.

Although a railroad crossing is not on a public street or highway it becomes a public crossing so as to impose upon a railroad company the same liability as at a public crossing where the railroad company, by some act or designation, invites or induces persons to regard and use it as such; or where with the company's acquiescence it has been used as a public crossing for a long time. 33 Cyc. 921; Coulter v. G. N. R. Co. 5 N. D. 568, 67 N. W. 1046; Johnson v. G. N. Ry. Co. 7 N. D. 284; Bishop v. R. Co. 4 N. D. 540, 62 N. W. 605; Kunel v. Soo R. Co. 18 N. D. 367; Black v. Central R. Co. 51 L.R.A.(N.S.) 1215, 89 Atl. 24.

The distinction between the doctrine of "implied invitation" and dedication is clear and fundamental; dedication is the permanent devotion of private property to a use that concerns the public in its municipal character; the doctrine of *sub judice* is a rule of negligence applicable to the owner of property only as long as he holds it out as intended for use by the public in their capacity as individuals. Homes v. Drew, 151 Mass. 578, 25 N. E. 22; Plumber v. Dill (Mass.) 32 Am. St. Rep. 463; 37 Am. Dig. Col. 392, Decen. Dig. L. Supp. Negligence, Key No. 32; Chicago, etc., R. Co. v. Reith, 65 Ill. App. 461; Baltimore & O. S. W. R. Co. v. Slaughter (Ind.) 7 L.R.A.(N.S.) 597, 79 N. E. 186; Wolf v. Des Moines Elev. Co. (Iowa) 98 N. W. 301.

One who impliedly invites another upon his premises, as the defendant here did, owes to such other person a greater degree of care than he does a mere licensee. Pomponio v. New York, H. & H. R. Co. (Conn.) 32 L.R.A. 530.

It is immaterial to the liability of the railroad company if it places or leaves objects near a crossing on its right of way, calculated to frighten ordinarily gentle horses, that such objects were not on the highway or within the margins thereof. 33 Cyc. 940, 1153; Heinmiller v. Winston, 131 Iowa, 32, 6 L.R.A.(N.S.) 150, 117 Am. St. Rep. 405, 107 N. W. 1102; Atchison, T. & S. F. R. Co. v. Morros, 45 Pac. 956; Baltimore

& O. S. W. R. Co. v. Slaughter (Ind.) 7 L.R.A.(N.S.) 597, 79 N. E. 186; Wolf v. Des Moines Elev. Co. (Iowa) 98 N. W. 301; Cleghorn v. Western R. Co. (Ala.) 60 L.R.A. 269.

A railway company is also liable where such objects as are likely to frighten gentle horses are placed on its right of way at a private crossing or a crossing not legally laid out but which it has impliedly invited the public to use. Baltimore & O. S. W. R. Co. v. Slaughter (Ind.) 7 L.R.A.(N.S.) 597, 79 N. E. 186; Barber v. Manchester, 72 Conn. 675, 45 Atl. 1014; Ft. Wayne Coop. Co. v. Page, 170 Ind. 585, 23 L.R.A. (N.S.) 946, 84 N. E. 145; Wolf v. Des Moines Elev. Co. 126 Iowa 659, 98 N. W. 301, 102 N. W. 517; Heinmiller v. Winston, 131 Iowa, 32, 6 L.R.A.(N.S) 150, 117 Am. St. Rep. 405, 107 N. W. 1102; Lobenstein v. McGraw, 11 Kan. 645; Cleghorn v. Western R. Co. 134 Ala. 601, 60 L.R.A. 269.

Whether or not defendant was negligent is to be determined from the purpose for which the kegs of nails were placed on the highway, the time at which they were placed there, and the period during which they were allowed to remain, and the manner and place in which they were put. Atchison, T. & S. F. R. Co. v. Morrow (Kan.) 45 Pac. 956; Heinmiller v. Winston, 7 L.R.A.(N.S.) 150; Nye v. Dibley (Minn.) 93 N. W. 524; Mallory v. Griffey, 85 Pa. 275.

Whether the kegs occupying the position in which they were placed were objects calculated to frighten horses was a question for the jury. Overson v. Grafton, 5 N. D. 281, 65 N. W. 676; Aver v. Norwich, 39 Conn. 376, 12 Am. Rep. 396; Atchison, T. & S. F. R. Co. v. Morrow (Kan.) 45 Pac. 956; Cleghorn v. Western R. Co. 134 Ala. 601, 60 L.R.A. 269.

A charge otherwise proper is not erroneous merely because an intelligent juror would know therefrom the effect of his answers to the special questions. Swallow v. First State Bank (N. D.) 161 N. W. 207.

This is especially true where the court charges the jury that they are not to consider what the ultimate effect of their answers will be. Chopin v. Badger Paper Co. (Wis.) 53 N. W. 452.

Even if the jury had found that the plaintiff was guilty of want of prudence and ordinary care in permitting the boy to drive the team, still they must have also found that such want of care and caution con-

tributed proximately to the injury sustained. Mares v. N. P. R. Co. 3 Dak. 336, 21 N. W. 5.

It must clearly appear that an instruction prejudicially erroneous misled the jury, or it is harmless. Pendroy v. G. N. R. Co. 17 N. D. 453, 117 N. W. 531; Lemke v. Milwaukee, E. R. & L. Co. (Wis.) 136 N. W. 286.

Mere verbal inaccuracies in instructions are not ground for reversal, unless of such a nature as to be misleading. 13 Standard Proc. 811; Silke v. Johnson, 22 N. D. 75, 132 N. W. 640, Ann. Cas. 1913E, 1005; Horn v. Southern R. Co. 78 S. C. 67, 58 S. E. 963; McIntyre v. Orner, 4 L.R.A.(N.S.) 1130, 76 N. E. 750; Swalm v. N. P. Ry. Co. (Wis.) 128 N. W. 62; Palmer v. Schultz, 138 Wis. 455, 120 N. W. 384.

The terms, "calculated" and "having a tendency," have been used interchangeably by the courts frequently, in the sense in which they were used in the case at bar. Norfolk & W. R. Co. v. Gee, 3 L.R.A.(N.S.) 111; Colby v. McDermont, 6 N. D. 495.

BRUCE, Ch. J. This is an action for damages which are alleged to have been sustained by reason of a team taking fright at some kegs of nails or spikes and running away.

The accident happened in the town of Medora and at or near a crossing of the defendant and on a road which passed by the depot. The road had never been legally laid out, but was simply a winding trail along the river which had been in use for many years. The crossing over the river was put in in September, 1884. Just before reaching the railway crossing, as one drives north toward the town of Medora on this road, there is a wooden bridge which is about 3 feet lower than the grade of the tracks. The kegs in question were about 5 feet north of the tracks and on ground level with them, and from 10 to 30 feet of the traveled highway. One approaching the tracks from the south would have no difficulty in seeing them.

There had been a wreck in the yards at Medora on August 24th, and these spike kegs were unloaded on the 25th to be used in repairing the track. The accident happened on the 27th day of August. The kegs were just west of the depot. Medora is a small town having a population of about 150 people, and there are no depot accommodations for freight of this kind. It, in fact, never appears to have been the custom of the railroad company to put dead freight of this kind into the depot.

39 N. D.—31.

The case is not one of a regularly dedicated or appropriated highway, but of a highway merely by prescription or sufferance. The proof, in fact, is far short of showing it to be a highway even by prescription. Burleigh County v. Rhud, 23 N. D. 362, 136 N. W. 1082.

If the defendant had been an ordinary landowner it is very clear that there would have been no liability on its part, as not only are the liabilities of one who consents to a highway by prescription or by license merely confined to the track itself (see State v. Auchard, 22 Mont. 14, 55 Pac. 361; Davis v. Bonaparte, 137 Iowa, 196, 114 N. W. 896; Bayard v. Standard Oil Co. 38 Ore. 438, 63 Pac. 614; O'Donnell v. Chicago, M. & St. P. R. Co. 69 Iowa, 102, 28 N. W. 464), but, to quote from the language of the supreme court of Pennsylvania, "if a farmer may not have a barrel of cider, a bag of potatoes, a horse power, a wheelbarrow or a wagon standing on his own premises by the side of the highway, except at the risk of having his whole estate swept away in an action for damages occasioned by the fright of an unruly horse, the vocation of agriculture will become perilous indeed." See Piollet v. Simmers, 106 Pa. 95, 51 Am. Rep. 496.

To again quote: "The principle is freely conceded that every person must so use his own property as not to injure others, and if he in a reckless, wanton, and wilfully negligent manner makes such use of his property as to injure others, he may be held liable in damages. It is equally true, however, that an owner of real estate has a right to use his property for every lawful purpose for which he may desire to use it, and is only required to exercise ordinary care in that use in order to relieve him fom liability for damages on account of injuries incidentally resulting to a traveler on the highway." Davis v. Pennsylvania R. Co. 218 Pa. 463, 12 L.R.A.(N.S.) 1155, 67 Atl. 777.

Although it is no doubt true that, if a railway company allows a crossing it must use ordinary care to keep such crossing in a safe condition, no different rule applies in the case of such a company than in that of an ordinary person.

The question is after all one of negligence; and although this question of negligence is ordinarily one for the jury, and in many cases of obstructions or unusual objects at a crossing, the question has been held to be a mixed question of law and of fact, it is almost everywhere held

that no proof need be introduced in the line of opinion evidence as to the tendency of the article to frighten horses, but that at most the matter is one which "is to be determined by the experience, observation, and intellect of the courts and jury as applied to all the facts of the particular case before them." Cleveland, C. C. & I. R. Co. v. Wynant, 114 Ind. 525, 5 Am. St. Rep. 644, 17 N. E. 118. There must also be some limit to liability and some reason; and the cases all recognize the fact that in some instances the nature of certain objects is a matter of such general knowledge that the courts may take judicial notice of the same, and that in such cases the question is one of law and of law alone. See Gilbert v. Flint & P. M. R. Co. 51 Mich. 488, 47 Am. Rep. 592, 16 N. W. 868, cited in Cleveland, C. C. & I. R. Co. v. Wynant, supra.

It must be remembered that in the case at bar the kegs were not placed in the highway but from 10 to 30 feet therefrom. They were placed upon the defendant's own property; and though perhaps it was not absolutely necessary to the work for which they had been obtained, namely, the repair of the tracks after a wreck, that they should have been put in that particular place, they were being used in that work, were placed where they were for that purpose, and were much in the same situation as the sacks of grain which the farmers everywhere in North Dakota scatter in their fields and along their highways during seeding operations, and as the machinery which they leave in the fields, and the sacks, tools, and utensils which they leave around their dwellings.

The question is, Would a reasonably cautious and intelligent man have anticipated that any danger to the traveling public would have arisen from such an act?

We think not, and that there is no room for reasonable men to differ on the proposition. Such being the case, the point is one for the court, and not for the jury, to pass upon.

We must of course take judicial notice of the nature and appearance of nail kegs. There is nothing in them more dangerous in appearance or more calculated to inspire fright than in a stump of a tree, a stone, a government mail box, or a sack of grain.

The testimony also shows that there was a bridge on the road to the south, the north end of which was 27 feet from the center and only 2.7 of an inch lower than the crossing. It is therefore clear that the plaintiff, when sitting in the seat of the wagon or buckboard, was in

clear view of the kegs, as, in fact, must any person of ordinary height have been even though walking upon the ground; and although the kegs might have been hidden while passing through the intervening portion of 27 feet, their existence must have been clearly known.

We are of the opinion that no negligence was shown on the part of the railway company. The judgment of the District Court is therefore reversed, and the cause is remanded with directions to dismiss the complaint.

GRACE, J. I dissent.

ROBINSON, J. (specially concurring). This is an appeal from a verdict and a judgment for $2,000 against the railway company. The charge is that at the crossing of a highway in Medora, and within a few feet of the highway, defendant by negligence left four kegs of spikes which frightened and caused a team of horses to run away with the plaintiff, to her damage $2,000. At the time of the runaway the plaintiff and her three small children were in a buckboard or one-seated buggy, and the team was driven by a little boy eleven years old weighing 59 pounds. The runaway occurred as the team was on the descent from a railway crossing, about 7 or 8 feet above the level of the country. One of the children was a baby, and when the team commenced to run, the mother took the baby on her lap and took hold of the lines with the boy. The boy was thrown out and took one line with him. The mother grabbed for the line, but could not reach it, so she was left in the buggy with the baby and another child and only one line to guide the team.

The case presents only two questions: (1) Was the company guilty of negligence in leaving the kegs near the highway, and did such kegs cause the team to run away? (2) Was the plaintiff guilty of contributory negligence in permitting so young and small a child to drive the team over such a crossing with his mother and the small children?

Of course the findings of the jury are in favor of the plaintiff, and on doubtful questions of fact on which there is conflicting evidence the courts commonly put the responsibility onto the jury and in that way wash their own hands of any guilt. Still, in reviewing a case of this

kind, it is for the judges to use their common sense and common knowledge. Kegs of nails are kegs of nails, boys are boys, horses are horses, and kegs of nails do not frighten them.

A little boy of eleven years old, weighing fifty-nine pounds, is not fit to drive a team and buckboard or one-seated buggy with a woman and two other small children. A woman with a baby on her lap is not fit to assist a little boy in driving a team over a rather dangerous place. In time of danger a team of horses should always be in control of a man, especially when there is on board a woman with small children. The chances are a thousand to one—and it may be easily demonstrated—that any competent man can safely drive a thousand teams over the crossing in question regardless of nail kegs, however numerous. When a team starts to run away a man can haul them in, saw their mouths, bring them to their senses with a good lash of the whip, and he can ride as fast as the team can run, and keep them on the road. But that may not be true in case of a man hampered and crowded with a lot of small children. It was sheer negligence and want of care and prudence for the mother to crowd herself and three small children onto the buckboard or one-seated buggy. It was made for only two persons. In driving a team a little boy is at a great disadvantage. He has not sufficient strength or the presence of mind. The horses know when they have a boy driving them and they have no confidence in him, but if the boy had been alone he would not have been crowded off his seat, and he could have remained in the buggy.

Mrs. Olmstead saw the accident and immediately heard the boy tell of it. He said: "Well, I don't know, unless the whiffletree got into the wheels and when it got loose it bumped the horses on the heels and they jumped and turned so short I fell out." In going down a hill with such a load, the horses must hold back, and there is danger of the whiffletree coming in contact with the horses' legs; that is a frequent cause of runaway.

The conclusion is that the railway company was not guilty of negligence in placing the nail kegs as they did, and defendant was guilty of negligence in driving with her three small children as she did, and her own negligence was the proximate and real cause of the accident.

## On Petition for Rehearing.

Bruce, Ch. J. In the petition for a rehearing in this case, exception is taken to several of the statements and the holdings of the main opinion, among them being one to the effect that "the kegs in question were about 5 feet north of the tracks, and on ground level with the tracks, and from 10 to 30 feet of the traveled highway. When approaching the tracks from the south one would have no difficulty in seeing them." The testimony also shows that there was a bridge on the road to the south, the north end of which was 27 feet from the center and only 2.7 feet lower than the crossing. It is therefore evident that the plaintiff when seated in the seat of the wagon or buckboard was in clear view of the kegs, as, in fact, most any person of ordinary height could have been even though walking upon the ground, and, although the kegs might have been hidden while passing through the intervening portion of the 27 feet, their existence must have been known.

Plaintiff and appellant claims that the evidence is that "from a point 97.3 feet south of the center of the crossing to the top of the south rail is an elevation of 7.3 feet, that from a point 9 feet north of the north rail and 10 feet east to the east thereof, which is approximately where the jury found that the kegs were placed, to the top of the north rail, is an elevation of 19.5 inches. The kegs, it is claimed, were about 2 feet high. It is claimed that it can be at once seen that the kegs were almost entirely concealed by the north rail when one stood on the crossing. Approaching from the south a team went up a grade of 7.3 feet in a distance of 93 feet to get on the crossing." Such being the case, plaintiff says that he is at a loss to know how the plaintiff could see the kegs before she got on the crossing.

All this may be true. Counsel, however, takes his data from the south end, and not the north end, of the bridge, and from a distance of 97.3 feet from the crossing, whereas the undisputed evidence also shows that the north end of the bridge and the part thereof which was nearest to the tracks was only 2.7 feet lower than the crossing. It is clear, therefore, that the kegs could have been seen from this point even if they could not have been seen from the other end of the bridge.

All of this, however, we hold to be unimportant. The question is whether the railroad company was negligent,—whether it was negligence

to leave the nail kegs where it did,—and we still adhere to our original opinion on this proposition.

In addition, and in response to the petition for a rehearing, we may say that it is immaterial whether the kegs were 10 feet or 6 feet from the tracks; also whether the company was in the habit of keeping such freight in its depot or had the facilities for so doing. We do not, in short, hold that a nail keg is an article which is easily calculated to frighten horses. We also note the contention that, although a highway by prescription is not proved, there is evidence of a crossing which had been sanctioned and allowed by a railroad company, and we are also aware of the general rule of law that, where a railroad company allows a crossing, it is required to use proper precautions for the safety thereof. We do not, however, find any lack of those reasonable precautions. We believe the law to be that "in no such case can a plaintiff recover unless the object of fright presents an appearance that would be likely to frighten ordinary horses, nor unless the appearance of the object is such that it should reasonably be expected that it might have that effect." See Nichols v. Athens, 66 Me. 402; Card v. Ellsworth, 65 Me. 547, 20 Am. Rep. 722. We cannot hold that a nail keg is such an object.

The petition for a rehearing is denied.