W. H. GELSTHORPE, COUNTY TREASURER, APPELLANT, *v.* DELLA M. FURNELL ET AL., RESPONDENTS.

[Submitted November 1, 1897. Decided November 15, 1897.]

*Inheritance Tax— Validity— Constitution—Estates Previously Probated.*

1. INHERITANCE TAX.—A collateral inheritance or succession tax is not a tax upon property—it is a tax or duty imposed by the state upon the right to receive property by inheritance, succession or any deed or instrument to take effect after the death of the grantor.
2. SAME—*Constitution.*—A collateral inheritance or succession tax which does not impose a uniform rate upon all heirs, devisees, legatees and distributees, and which does not apply to estates valued at less than a stated sum is not in conflict with Section 1, Article XII of the Constitution which provides for Uniformity in taxation.
3. SAME—*Estate Previously Probated.*—The section of the law which provides that it shall apply to "all estates which have been probated before, and shall be distributed after the passage of" the act, is not unconstitutional—the tax is not upon the property, but upon the right to receive the same upon distribution.

*Appeal from District Court, Cascade County. J. B. Leslie, Judge.*

PROCEEDING by W. H. Gelsthorpe, county treasurer, against Della M. Furnell and others, to enforce payment of an inheritance tax. From a judgment sustaining a demurrer to the complaint, plaintiff appeals. Reversed.

*M. M. Lyter* and *C. B. Nolan,.* Attorney General, for Appellant citing cases in the opinion.

*Wm. T. Pigott,* for Respondents.

We contend that the act is repugnant to the Fourteenth Amendment to the Federal Constitution, in that it denies to persons within the jurisdiction of Montana the equal protection of the laws.

a. It exempts from tax estates under $7,500 in value, while it levies the tax upon all estates of that or greater value. The act does not exempt from taxation the first $7,499.99 of an estate; it is not provided that every estate shall have the benefit of exemption as to a value less than $7,500. An estate valued at $7,499.99 is exempt, but one of greater value is taxed not only upon the excess but also upon the $7,499.99. For example : A's estate nets $7,499. This is exempt. B's estate nets $7,500. This entire amount is taxed. Citing *County of Santa Clara* v. *Southern Pacific Railroad Co.,* 18 Fed. 385; *The Railroad Tax Cases,* 13 Fed. 722; *State ex rel. Schwartz* v. *Ferris,* 53 Ohio St. 314, 30 L. R. A. 218.

b. It exempts from taxation estates distributed prior to its passage. while imposing the tax upon all other estates. (*Gulf Railroad Co.* v. *Ellis,* 165 U. T. 150.)

The act is in violation of the Constitution of Montana :

Nowhere within the four corners of the act is there an intimation that the Legislature had in mind the imposition of a tax upon the right of succession. The tax is expressly declared upon property. We must admit that several of the courts have held the tax to be upon the privilege and not upon the property; but we submit that the Pennsylvania rule declared *In re Short's Estate,* 16 Pa. 63 and *In re Bittinger's Estate,* 129 Pa. St. 338, that the tax is upon the property itself is in harmony with the plain terms of the act. *In re Short's Estate* appears again under the name of *Carpenter* v. *Commonwealth,* 17 How. 456; and the Supreme Court of the United States, at page 463, speaks of the tax as one on property only. The justice writing the opinion in *State* v. *Ferris,*

*supra,* holds to the view that the "language used in the statute is upon its face clearly a taxation of the property itself and not of the right to acquire property. And for myself, I think this is the true construction of the act."

If the tax be declared upon property as distinguished from the privilege of succession, the act violates Section 1, Article 12, providing that the Legislature shall levy a uniform rate of assessment and taxation, and shall prescribe such regulations as shall secure a just valuation for the taxation of all property except that especially excepted.

The act violates also Section 9, in that the rate exceeds $2\frac{1}{2}$ mills on each dollar of valuation. It violates Section 11, in that the tax imposed is not uniform upon the same class of subjects. (*State ex rel.* v. *Ferris, supra, State* v. *Gorman* (Minn.) 41 N. W. Rep. at page 950; *Curry* v. *Spencer,* 61 N. H. 624, 60 Am. Rep. 337; and see *State* v. *Mann,* 76 Wis. 469.)

Should the court, however, hold that the tax is on the privilege of succession and not upon the property itself, we confidently submit :

a. It violates the very principle upon which the constitution is based,—the equal protection and benefit of the people. This principle is discussed in I, (a), (b), (c), *supra,* and in *Curry* v. *Spencer, State* v. *Gorman* and *State* v. *Mann, supra.*

b. Our constitution requires equality in our tax laws and equality in their execution. Indeed, since the adoption of the Fourteenth Amendment to the Federal Constitution, such equality must be observed though the state constitution be silent on the subject. *The Railroad Tax Cases* and *County of Santa Clara* v. *Railroad Co., supra.* The exemption from taxation of estates valued at less than $7,500 violates this doctrine as well as Sections 1 and 2 of Article 12.

c. If applicable to the estate of Furnell, the act is repugnant to Section 11 of Article 3.

At the moment of the testator's death, the rights of the devisees and legatees vested. (*Brenham* v. *Story,* 39 Cal. 188;

Black on Constitutional Law, 429; Cooley on Constitutional Limitation, page 359; Beach on Mod. Eq. Jurisp., § 1045; Crosswell on Executors and Administrators, § 171; *Westervelt* v. *Gregg*, 62 Am. Dec. 160; *Ervin's Appeal*, 55 Am. Dec. 499; *Clark* v. *McCreary*, Sm. & Mar. (Miss.) 347; *Rockhill* v. *Jones*, 47 Md. 1; §§ 1794, 1851 Civil Code.)

HUNT, J.—The Legislature of Montana, by an act approved March 4, 1897, enacted a law establishing a tax on direct and collateral inheritances. The law substantially provides that "all property" which shall pass by will, or by the intestate laws of the state, from any person who may die seised or possessed of the same, shall be, and is, subject to a tax at a fixed rate on every $100 of the clear market value of such property; provided, that an estate valued at a less sum than $7,500 shall not be subject to any such "tax or duty."

It is also provided that the tax shall be levied "upon all estates which have been probated before, and shall be distributed after the passage and taking effect of this act;" and, again, that the act should apply to all estates remaining undistributed at the time the law took effect, and that in such estates the tax should be determined and collected as in other cases. The act went into effect March 4, 1897. (Session Laws, 1897, page 83.)

Matthew Furnell, a citizen of Cascade county, Montana, died testate May 6, 1896, nearly one year before the passage of this law, leaving his property to the respondent, his wife, in her own right, and as trustee for his minor children. The value of the estate greatly exceeds $7,500. The will was duly proven in 1896, and administration was had. On July 19, 1897, after the inheritance tax law was in force, the District Court ordered a distribution of the estate and the discharge of the executors. Before this order was made, however, the county authorities took steps to collect the inheritance taxes, and thereupon it was agreed between the respective counsel for the interested parties that the order of distribution and discharge should in no way prejudice or delay

the state in the collection of the inheritance taxes, if found to be justly due.    This proceeding was then instituted to inforce the payment of the taxes.

The District Court held that,  as applied to the estates of persons who might die after the law took effect,  the statute was constitutional,  but that where,  as in this case, the decedent died before March 4,  1897, the tax or assessment could not be collected, for as to such case the law was invalid.    The learned judge said that the legatees under the will took immediately at the death of the decedent a vested estate, and that, although the beneficiaries under the will were postponed in the matter of present possession and enjoyment,  their interest was none the less a vested one,  charged only with the burdens imposed by law existing and in force at the time such interests vested.

As the validity of the act affecting successions opening since its enactment, as well as its application to successions already in the course of settlement when the law was passed, is contested, it devolves upon this court to review each of the respondents' principal contentions.

It is urged that the law attempts to impose a tax upon property, as distinguished from the right or privilege of succession; that, if it be held to lay a tax on the right of succession, still it is invalid, because the Legislature is limited in its right to tax only such property as is defined by Section 17 of Article 12 of the State Constitution; that, as applied to estates remaining undistributed at the time the act took effect, it disturbs and lessens vested rights, and impairs the obligations of contracts; and that the act is repugnant to the Fourteenth Amendment to the Constitution of the United States, in that it denies to persons within Montana the equal protection of the laws.

The better view, as laid down by the authorities, is that a collateral inheritance or  succession tax is a duty or bonus exacted in certain instances by the state upon the right and privilege of taking legacies, inheritances, gifts and successions passing by will, by intestate laws, or by any deed or instru-

ment, made *inter vivos*, intended to take effect at or after the death of the grantor.

The burden or the tax is not imposed upon the property itself, but upon the privilege of acquiring property by inheritance. In nearly all inheritance tax laws the statutes provide for appraising the property to be inherited, but the object of such valuation is not to tax the property itself. It is to arrive at a measure of price by which the privilege of inheriting can be valued. (*State* v. *Hamlin*, 86 Me. 495, 30 Atl. 76.)

In speaking of the inheritance tax law of New York state, Judge Wallace, of the United States Circuit Court, said : "Such a tax is no more one upon the bonds than an income tax is one upon the property out of which the income is derived, or an excise tax is one upon the articles manufactured or sold. The bonds are the subject of the appraisal, but the privilege is the subject of the tax. Inasmuch as it is lawful for the state to withhold altogether the privilege of acquiring property within its dominion by will or inheritance, whether the property consists of government bonds or anything else, it is lawful for the legislature to annex any conditions to the privilege which may seem expedient, and do not conflict with the organic law of the state or the constitution or laws of the United States." (*Wallace* v. *Myers*, 38 Fed. 184.)

The courts generally approve of this doctrine. In the early case of *Eyre* v. *Jacob*, 14 Grat. 422, the court said that such a tax could not be regarded, in a proper legal sense, as a tax upon property, but as one "upon the transmission of property by devise or descent to collateral kindred." (*Strode* v. *Commonwealth*, 52 Pa. St. 181.)

The intention of the Legislature was to exact a certain premium for the enjoyment of a civil right secured under the laws of succession. The reasoning of the many cases upholding such laws proceeds upon the indisputable proposition that the state has the power—unless denied it by constitutional prohibition—to regulate the devolution and distribution of an intestate's property, and equal authority to limit the power of a testator to bequeath his property to whom he pleases. (*State* v. *Dalrymple*, 70 Md. 294, 17 Atl. 82.)

Beneficiaries under wills, and heirs generally, must know that statutes may constitutionally limit the power of disposition and acquiring of property. "The power to dispose of property by will is neither a natural nor a constitutional one, but depends wholly upon statute, and may be conferred, taken away, or limited and regulated, in whole or in part by the Legislature." (*Minot* v. *Winthrop*, 162 Mass. 113, 38 N. E. 512.)

And under the power of regulation, clearly, the state may impose reasonable burdens or conditions pertaining to the taking of property by will or inheritance. (*Strode* v. *Commonwealth*, 52 Pa. St. 181.) It therefore has a right to levy an excise tax or duty as a price upon the right or privilege of succession under a will, or by devolution in intestacy, for the purpose of increasing its revenues. (*In re Hoffman's Estate*, 143 N. Y. 327, 38 N. E. 311.)

The United States Supreme Court has sustained such a tax, —not as upon property, but as upon a right to take property. (*Mager* v. *Grima*, 8 How. 490; *United States* v. *Perkins*, 163 U. S. 625, 16 Sup. Ct. 1073.)

In the last case, Justice Brown, for the court, said : "In this view, the so-called inheritance tax of the state of New York is in reality a limitation upon the power of a testator to bequeath his property to whom he pleases; a declaration that, in the exercise of that power, he shall contribute a certain percentage to the public use,—in other words, that the right to dispose of his property by will shall remain, but subject to a condition that the state has a right to impose. Certainly, if it be true that the right of testamentary disposition is purely statutory, the state has a right to require a contribution to the public treasury before the bequest shall take effect. Thus, the tax is not upon the property, in the ordinary sense of the term, but upon the right to dispose of it, and it is not until it has yielded its contribution to the state that it becomes the property of the legatee."

The most exact rule is that which regards the tax as upon the right to receive property, rather than the right to dispose

of it.   Such is the explanation of the nature of the tax as given by Dos Passos in his valuable book on Inheritance Taxes (page 31), and as stated in the following clear language by Judge Burkett, of the Ohio Supreme Court, in *State ex rel. Schwartz* v. *Ferris*, 53 Ohio St. 314, 41 N. E. 579 :

"In view of the authorities cited, it must be conceded that the General Assembly has the power to pass an inheritance tax for purposes of general revenue, unless prohibited by the constitution of our state.   Properly understood, it is not the right to transmit, but the right and privilege to receive, that is taxed.   The right to dispose of property during the lifetime of the owner cannot be separated from the property itself, and therefore to tax the right of disposal by contract in the lifetime of the owner, even though to take effect at his death, is to tax the property itself.   But the right to dispose of the property by will or descent, taking effect after the death of the owner, is not so closely connected with the right of property, and it is not so clear that such right may not be taxed.

"But, when the right to receive the property is considered, it is clear that the right is distinct and separate from the property itself, and the state may tax this right to receive property; and this is so whether the property is disposed of by the owner during his lifetime, or at his death.

"This right to receive property is under the control of the Legislature, and it has the power to regulate and lay such burdens thereon as it may see fit, within the provisions of the constitution.   To regulate by taxation or otherwise the privilege or right to receive property is not in conflict with the first section of the bill of rights, which recognizes the inalienable right of acquiring, possessing, and protecting property.   Were it otherwise, all our laws as to wills, descent, distribution, and conveyances would be unconstitutional."   The rule is also enunciated in the recent case of *State* v. *Alston*, 28 L. R. A. 178; 30 S. W. (Tenn ) 750.

The language of the Montana statute, that "all property" shall be subject to a tax, etc., requires no construction not in

harmony with the usual interpretation given to inheritance tax laws generally using identical language. In *State* v. *Hamlin*, *supra*, this point was made; but the court said the act should be construed "according to its essential principle, object, and effect. Substance, and not form of phrase, is the important thing. All exactions of money by the government are taxes, but they are not all levied by assessment upon values. The latter class refers to burdens recurring periodically, which are assessed upon valuations of property made at stated intervals."

A majority of the Ohio court so held, too, in *State* v. *Ferris*, *supra*, where the language of the statute, upon its face, imposed the tax as upon "property;" and we are of the opinion that, under the recent decisions upon similar statutes, ours must be construed, upon this point, as a constitutional tax upon the right to receive property, and not as upon the property itself.

The case of *Carpenter* v. *Commonwealth*, 17 How. 456, is cited by the respondent's counsel as upholding the view that the tax is upon property alone. The court there spoke of the Pennsylvania statute as one imposing a tax upon the property of the decedent, but we do not understand the decision to be that such a tax is a property tax, strictly speaking. Certainly, no such interpretation was put upon inheritance tax laws by the same court in *Scholey* v. *Rew*, 23 Wall. 331, or in their recent decision in *U. S.* v. *Perkins*, heretofore cited, where Justice Brown quotes liberally from various cases to distinguish the tax as not being one upon property, in the ordinary sense of the word.

The tax, therefore, being upon a civil right and privilege, we briefly inquire whether the statue imposing it violates the principles of equality and uniformity prescribed by Sections 1 and 11 of Article 13 of the state constitution. We do not think it does. Judge Cooley, in Cooley on Taxation (page 570,) lays it down that the sovereignty may, in the discretion of its legislature, levy a tax on every species of property within its jurisdiction, or it may select any particular species

of property and tax it, and "that what is true of property is true of privileges and occupations, also. The state may tax all, or it may select for taxation certain classes, and leave the others untaxed." Of course, this power may be restricted by the constitution; but that author expressly says on page 584 that succession to an inheritance may be taxed as a privilege, notwithstanding the property of the estate is taxed, and taxes on property are required by the constitution of the state to be uniform. Cooley supports his text by citing *Eyre* v. *Jacob*, *supra*, where the court regarded the equality and uniformity clauses of state constitutions as applying only to direct taxes upon property, intended to prevent arbitrary taxation of property according to kind or quality, without regard to value, and not as limitations upon the power of the legislature as to the objects of taxation. But it is unnecessary to go at length into those questions now; for, conceding that succession taxes are within the rule contended for, the application of the principle of uniformity and equality must always be a reasonable one. The legislature is not prevented by the constitution from the exercise of discretion as to what classes of rights or privileges it may enumerate as subject to taxation, provided, always, the tax imposed is uniform in its application to all rights and privileges within the class defined, and provided, further, we take it, that any classification made is based upon a reasonable, and not a mere arbitrary, ground. (*State* v. *Alston*, *supra*.) Nothing laid down in *Gulf*, *Etc.*, *Railway Co.* v. *Ellis*, 165 U. S. 150, 17 Sup. Ct. 255, conflicts with these expressions.

In *Minot* v. *Winthrop*, *supra*, the tax was urged as an unequal one, because it was not imposed upon all estates, and upon all heirs, devisees, legatees, and distributees. But the court said that distinctions between collateral kindred or strangers, in reference to the assessment of such taxes, had the sanction of nearly all states which levied taxes of this kind. Continuing, the court said : "It has the sanction of reason, for the moral claim of collaterals and strangers is less than that of kindred in direct line, and the privilege is there-

fore greater. The tax imposed by this statute is uniformly imposed upon all estates and all persons within the description contained in it, and the tax is not plainly and grossly oppressive in amount." (*State* v. *Alston*, *supra*.) The court also answered the argument that the tax was unreasonable, on account of certain exemptions, by declaring that the cost of administering smaller estates is proportionately greater than that in administering large ones, and this operated to diminish amounts received, and, furthermore, that the laws of the different states and nations which levied taxes on devises, legacies, and inheritances have usually made exemptions, but that it was peculiarly within the discretion of the legislature to determine what exemptions should be made, and apportioning the burdens of taxation among those who can best bear them.

In *State* v. *Hamlin*, *supra*, the court said that it was within the province of the legislature to say who shall and who shall not take an estate, and the proportion in which they may take, and that the state was not prevented from exacting an excise or duty from the person taking for the privilege allowed by the state. "It is necessary," said the court, "to make such excise uniform as to the entire class of collaterals. It must not tax the one and exempt another of the same class, but it is not a violation of this principle to require an excise from all collaterals and strangers, and exempt from the excise classes nearer in blood to the decedent."

Provision is made in the statute for notice, to the person whose right is liable for the payment of the tax, of the proceeding affecting his interests; and opportunity is given him to be heard in relation to the value of his property, and the amount of the tax to be imposed.

Considering all these matters, we find nothing in the statute violative of the uniformity and equality clauses of the constitution; and we are unable to see how, in this respect, it denies to persons within Montana the equal protection of the laws, or takes property without due process of law. (*In re McPherson*, 104 N. Y. 306, 10 N. E. 685.)

Thus far, we find ourselves in accord with the opinion° of the District Judge. But, after painstaking investigation and careful deliberation, we have concluded that he was in error in ruling that, as applied to an estate remaining undistributed when the act took effect, it disturbed and lessened vested rights.

It is argued that at the moment of the testator's death the rights of the legatees and devisees vested.

By our statutes, testamentary dispositions, including devises and bequests to a person on attaining majority, are presumed to vest at the testator's death (Section 1794, Civil Code); and real and personal property of one who dies without disposing of it by will, pass to the heirs of the intestate, subject to the control of the District Court, and to the possession of the administrator for purposes of administration.

We believe that the privileges and rights of heirs and legatees to take and receive shares of the property of a decedent are vested immediately upon the death of the testator or intestate. That the right to a distributive share in an estate vests in those entitled, directly upon the death of the intestate, is well established. (Crossw. Ex'rs & Adm'rs, p. 396; *Westervelt* v. *Gregg*, 12 N. Y. 202; *Davis* v. *Newton*, 6 Metc. (Mass.) 537.)

Chief Justice Shaw said in this last case : "The decree does not found the right, but judicially ascertains the heir, the whole amount to be distributed, and the amount of the distributive share of each. This distributive share, therefore, though its amount was uncertain and the time of payment contingent, was a vested property of the insolvent at the time of the decease of his brother Henry."

Such a right is a valuable one. It may be sold or mortgaged by the person to whom it belongs, and no law can be so changed as to justly deprive him of it, and bestow it upon another, without the owner's consent. It is also true that, after a testator's death, rights of legatees are entitled to every safeguard usually afforded by the state for the protection of individual rights. (Cooley, Const. Lim. p. 439.)

But, notwithstanding these truths, a person may not apply, as ''a shield of protection,'' the term ''vested rights,'' against all considerations designed by the legislature to promote the general welfare, or establish an advanced public policy for the state.

Judge Cooley (page 437, Const. Lim.), says: ''In organized society, every man holds all he possesses, and looks forward to all he hopes for, through the aid and under the protection of the laws; but as change of circumstances and of public opinion, as well as other reasons affecting the public policy, are all the while calling for changes in the laws, and as these changes must influence more or less the value and stability of private possessions, and strengthen or destroy well-founded hopes, and as the power to make very many of them could not be disputed without denying the right of the political community to prosper and advance, it is obvious that many rights, privileges, and exemptions which usually pertain to ownership, under a particular state of the law, and many reasonable expectations, cannot be regarded as vested rights, in any legal sense.''

A vested right is held subject to the laws for the enforcement of public duties. Why, on a similar principle, is a right to take a legacy not subject to the laws for the assessment and collection of a tax, as a premium upon the right and privilege to receive the inheritance, as much as it is subject to laws which authorize the taxation of the very property bequeathed? It cannot be denied that the tax is imposed for public uses and purposes. The whole state, including these legatees, have an interest in the collection of taxes for state purposes. Protection is guaranteed by the state, not alone to the property of the decedent and to those who are justly entitled thereto, but also to the right to receive the property, by affording to those enjoying that right means to determine its extent, and enforce the same when determined, to the end that it shall accrue absolutely to them, freed from the control of an administrator or executor. As a correlative proposition, the state has power to demand of those upon whom it

confers the right, and to whom it affords this measure of protection, a tax, to help sustain its protection.

In *Davidson* v. *New Orleans*, 96 U. S. 97, the general proposition was laid down that whenever by the laws of a state, or by state authority, a tax, assessment, servitude, or other burden is imposed upon property for the public use, and those laws provide for a mode of confirming or contesting the charge thus imposed, in the ordinary course of justice, with notice to the person, the judgment in such proceedings cannot be said to deprive the owner of his property without due process of law, however obnoxious it may be to other objections.

Now, clearly, it is not obnoxious to the constitution to lay a tax on the right to take, even where such right is vested while the estate is subject to the control of the District Court to ascertain the exact value of the right, and the possession of an executor for purposes of administration. It is this important restriction to the vested right which respondent seems to have overlooked in the case. The acts of administration are conservatory means directed by the state to ascertain those vested rights. But, although vested, the rights of the legatees ''are subordinate to the conditions, formalities, and administrative control prescribed by the state in the interests of its public order, and are irrevocably established upon its abdication of this control at the period of distribution.'' (*Carpenter* v. *Commonwealth*, 17 How. 456; *Succession of Oyon*, 6 Rob. (La.) 504; *Succession of Deyraud*, 9 Rob. (La.) 357.)

Nor is there anything in the federal or state constitutions which prevents the state, during this period of administration and control, from imposing and collecting the tax upon the vested right to receive, before the legatee actually received under a decree of distribution. The interests vested only in the manner and upon the conditions authorized by the laws of the state (*Prevost* v. *Greeneaux*, 19 How. 1;) and the imposition of an inheritance tax, though made as a condition for the taking of the inheritance after the right to take was vested,

yet before the taking, does not impair the value of the right in any greater manner than the imposition of a rate of taxation greater after an interest vested, than before, would impair the value of the property itself.

The inherent power of the state gives it the right to lay the tax. (*Davidson* v. *New Orleans, supra.*) The statute is but an exercise and declaration of that power; and, when the rights of the legatees vested (that is, at the death of the testator,) the right of the state to tax in any reasonable manner it saw fit was simultaneously acquired. (*Arnaud's Heirs* v. *Executor*, 3 La. 336.)

*In re McPherson*, 104 N. Y. 306, 10 N. E. 685, the Court of Appeals, aided in its conclusions by exceptionally able briefs and arguments, published in the report cited, trace the origin of inheritance taxes, and expressly decide that the imposition and collection of such taxes are simply incidents in the final settlement and adjustment of estates. It follows that as final settlements are made by an administrator, they are acts in the course of administration, and the imposition of the tax but an item or incident therein.

In announcing the doctrine of the constitutionality of such a tax, and the power of the legislature over the subject of taxation, Judge Earl, speaking for the court in the case just cited, said : "We entertain no doubt that such a tax can be constitutionally imposed. The power of the legislature over the subject of taxation, except as limited by constitutional restrictions, is unbounded. It is for that body, in the exercise of its discretion, to select the objects of taxation. It may impose all the taxes upon lands, or all upon personal property, or all upon houses or upon incomes. It may raise revenue by capitation taxes, by special taxes upon carriages, horses, servants, dogs, franchises, and upon every species of property, and upon all kinds of business and trades. (*People* v. *Mayor of Brooklyn*, 4 N. Y. 419; *Stuart* v. *Palmer*, 74 N. Y. 183; *People* v. *Equitable Trust Co.*, 96 N. Y. 387; *Portland Bank* v. *Apthorp*, 12 Mass. 252; Cooley, Tax'n, 7.) Taxes upon legacies and inheritances have been approved gen-

erally by writers upon political economy and systems of taxation; and no tax can be less burdensome, and interfere less with the productive and industrial agencies of society. Such taxes were imposed in Rome two thousand years ago, and are now imposed in England and several of the continental countries of Europe, and in the states of Pennsylvania, Maryland, and Virginia, and perhaps other states of this country." To this list of states may now be added Tennessee, Massachusetts, Maine, New Jersey, West Virginia, and others.

And upon the powers of taxation we quote the following language of Justice Miller in *Davidson* v. *New Orleans, supra:* "It is said that the plaintiff's property had previously been assessed for the same purpose, and the assessment paid. If this be meant to deny the right of the state to tax or assess property twice for the same purpose, we know of no provision in the federal constitution which forbids this, or which forbids unequal taxation by the states. If the act under which the former assessment was made is relied on as a contract against further assessments for the same purpose, we concur with the Supreme Court of Louisiana in being unable to discover such a contract."

Possible consequences and difficulties in executing the act in certain cases, where death occurred prior to the enactment of the law, and where the estates of such persons have not been ordered to be distributed, are advanced by way of argument. While we doubt whether many embarassments will ensue, yet, if they do, it cannot affect the constitutionality of the act upon all estates brought within its provisions. Our consideration has been addressed to the question of the power of the legislature to provide for such a tax, and to impose it upon the right to take estates not distributed. Whether or not the power has been expediently exercised is not for the court to decide.

In conclusion, our judgment is that the act is constitutional and valid, as affecting the estate involved in this case, and that the lower court erred in holding otherwise. The judgment is reversed, and the case is remanded, with instructions to over-

rule the demurrer and motion of the respondent, and grant respondent leave to answer.

*Reversed and Remanded.*

PEMBERTON, C. J., and BUCK, J., concur.

