STATE EX REL. RANKIN, ATTORNEY GENERAL, RELATOR, *v.* DISTRICT COURT, RESPONDENT.

(No. 5,494.)

(Submitted March 17, 1924.   Decided April 19, 1924.)

[225 Pac. 804.]

*Supervisory Control—Inheritance Taxes—Retrospective Statute — Validity — Constitution — Presumptions—Descent and Distribution—Right of Succession—Power of State to Impose Conditions.*

Supervisory Control—When Appeal not Bar to Issuance of Writ.
   1.   Where the remedy by appeal is neither plain, speedy nor adequate it is not a bar to the issuance of a writ of supervisory control.

Statutes—Constitutionality—Presumption.
   2.   Until the contrary is made to appear beyond a reasonable doubt, the constitutionality of an Act will be presumed and its validity upheld.

Inheritance Taxes—Statute—Constitutionality.
   3.   *Held,* that Chapter 65, Laws of 1923, imposing an inheritance tax upon all estates of persons who died since April 1, 1921, remaining undistributed on the date of its approval, March 5, 1923, is a valid enactment and not open to attack on the grounds that it violates the equal protection of the law clause of the Constitution, is class legislation and authorizes the taking of property without due process of law.

Same—Descent and Distribution—Right of Succession—State may Impose Conditions on Right to Take.
   4.   The right of succession is not inherent, but the state may impose

---

   3.   Constitutionality of rule of uniformity and equality as applied to succession taxes, see notes in 127 Am. St. Rep. 1042; 1 Ann. Cas. 30; 7 Ann. Cas. 1061; 8 Ann. Cas. 159; 12 Ann. Cas. 953; Ann. Cas. 1913D, 757; 33 L. R. A. (n. s.) 592.

such conditions on the right to take by inheritance as it may deem proper, provided the statute is made applicable to all in like situation.

Same—Retrospective Act—Validity.

5. *Held,* that in the absence of express constitutional inhibition, the legislature may enact a retrospective inheritance tax law providing that it shall include estates of persons who died prior to its enactment, remaining undistributed at the date the Act becomes effective.

Same—Taxation—Constitutional Inhibitions not Applicable to Inheritance Taxes.

6. Section 11, Article XII, of the Constitution, providing that taxes shall be levied and collected by general laws and for public purposes only, and shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, relates to property taxes only, and not to such as are imposed on inheritances.

Original application by the State on the relation of Wellington D. Rankin, Attorney General, against the District Court of the Second Judicial District of the State of Montana in and for the County of Silver Bow, and Joseph R. Jackson, a Judge thereof, for writ of supervisory control to annul an order denying the petition of relator for the appointment of an appraiser of the value of an' estate to determine the amount of inheritance tax due the state. Writ issued.

*Mr. Wellington D. Rankin,* Attorney General, for Relator, submitted a brief and argued the cause orally.

*Mr. Henry C. Smith* and *Messrs. Kremer, Sanders & Kremer,* for Respondents, submitted a brief; *Mr. Smith* and *Mr. J. Bruce Kremer* argued the cause orally.

MR. JUSTICE GALEN delivered the opinion of the court.

This is an original application for a writ of supervisory control. Upon the filing of the petition an order to show cause was regularly issued, and the matter presented for decision pursuant to such order.

It appears that by the Seventeenth Legislative Assembly, in Extraordinary Session, an Act was regularly passed and approved, providing for the imposition of a "tax on direct and collateral inheritances, bequests and devises." (Chap. 14, Laws

Ex. Sess. 1921; secs. 10377–10400, Rev. Codes 1921.)   That Act was approved March 26, 1921, and by its terms it was to become effective from and after the first day of April, 1921.   By it a tax on direct and collateral inheritances, bequests and devises was imposed upon every transfer of property, except a transfer to the state or one of its subdivisions or to an organization devoted exclusively to religious, charitable or educational purposes.   An enumeration of the transfers effected is set forth, including a transfer by will, laws of succession, or by a deed or gift made in contemplation of death; the rates and exemptions being prescribed.

On May 11, 1921, one James A. Murray died in the county of Monterey, state of California, and "left estate and property in the state of Montana, consisting of real property, tangible and intangible personal property, stocks and bonds, choses in action and other property" alleged to "have a value of upwards of one million dollars."   In April, 1923, Mary H. Murray, the widow of the deceased, tendered to the state treasurer the sum of $150, contending that under the Act she was not required to pay more than the primary rate on $15,000, since by the Act she, as widow of the deceased, was given an exemption to the full extent of $10,000 of the value of the estate passing to her, and that she was not required to pay a tax on any amount to be distributed to her under the terms of the will of the deceased in excess of the sum of $25,000.   The state treasurer refused to accept the tax tendered by her, and thereupon she applied to this court for a writ of *mandamus* to compel the state treasurer to accept the amount of the tax tendered by her.   After hearing had, pursuant to an alternative writ issued, her contention was sustained and the writ made peremptory.   (*State ex rel. Murray* v. *Walker, State Treasurer,* 64 Mont. 215, 210 Pac. 90.)   Subsequently, and as a direct consequence of that decision, the legislature in 1923 re-enacted the Inheritance Tax Law (Chap. 65 of the Laws of 1923), and provided therein for the payment of a tax by lineal heirs on the

value of all property descending to them in excess of certain stated amounts; the exemption allowed to a widow of a decedent being fixed at $17,500. Subsequent to this later enactment, on the 14th of March, 1923, the relator herein, as attorney general for Montana, filed in the district court of Silver Bow county a petition for the appointment of a special appraiser of the value of the estate of James A. Murray, deceased, to determine the amount of inheritance tax required to be paid the state of Montana therefrom. Objections were regularly made by W. S. K. Brown as executor of the last will and testament of James A. Murray, deceased, to the application, and thereafter the matter was regularly brought on for hearing and heard in department No. 1 of the district court, before Honorable Joseph R. Jackson, Judge thereof. After having been presented, argued and submitted, an order was by the .court entered on February 16, 1924, denying the petition and sustaining the objections made thereto. Thereupon, on February 28, 1924, the relator duly filed and presented his petition herein to this court.

As to the propriety of the issuance of the writ, it is urged [1] that there is an adequate remedy provided by appeal. Suffice it to say, we are of the opinion that sufficient showing is made for the invocation of the extraordinary supervisory power of this court by the allegations of the petition. An order refusing to appoint a special appraiser of the amount of the inheritance tax chargeable against an estate is not among the appealable orders specially enumerated in the statute. However, whether such an appeal may be included within the general language employed in the first subdivision of section 9731, Revised Codes of 1921, is not here necessary for decision. The remedy by appeal, if it exists at all, is neither plain, speedy nor adequate. (*In re Tuohy's Estate*, 23 Mont. 305, 58 Pac. 722; *State ex rel. Rubin* v. *District Court*, 62 Mont. 60, 203 Pac. 860; *State ex rel. Duggan* v. *District Court*, 65 Mont. 197, 210 Pac. 1062.) The question presented for our

decision in this proceeding is whether the retroactive provisions of the Act of 1923 are constitutional.

By that Act it is provided, in part: "A tax shall be and is hereby imposed upon any transfer of property, real, personal or mixed, or any interest therein, or income therefrom in trust or otherwise, to any person, association or corporation * * * in the following cases: * * * (4) When imposed: Such tax shall be imposed when any such person or corporation becomes beneficially entitled, in possession or expectancy, to any property or the income thereof, by any such transfer whether made before or after the passage of this Act; provided that the provisions of this Act shall apply to all estates of all decedents who have died since the first day of April, 1921, and which estates remain undistributed on the date when this Act takes effect, to the same extent and in the same manner as though this Act had been in full force and effect at the dates of death of such decedents, and if any tax shall have been paid by any executor, administrator, heir, legatee or devisee of any such decedent before the date when this Act takes effect, the amount of such tax so paid shall be allowed as a credit on the total amount of tax required to be paid by such executor, administrator, heir, legatee, or devisee under the provisions of this Act." (Sec. 1.) It will be noted that attempt is thus made to have the statute apply to all estates of decedents who died since April 1, 1921, *"which estates remain undistributed on the date when this Act takes effect,"* March 5, 1923.

We approach a consideration of the constitutionality of the [2] Act in question, indulging the presumption that it is constitutional, it being our duty to uphold it unless its unconstitutionality is apparent beyond a reasonable doubt. (*State ex rel. Bonner* v. *Dixon,* 59 Mont. 58, 195 Pac. 841; *Gas Products Co.* v. *Rankin,* 63 Mont. 372, 24 A. L. R. 294, 207 Pac. 993.)

It is urged by counsel for the respondents "that subdivision [3] 4 of section 1" of the 1923 Act, being the retroactive

clause thereof, "is unconstitutional and void" because in "violation of the constitutional guaranties requiring equal protection of the law, due process of law," and because attempt is thereby made to fix "an arbitrary, artificial, and abortive classification among decedents."

The retroactive feature of the Act is made the basis of the attack, it being argued that it violates the prohibition of the Constitution against special or class legislation (sec. 26, Art. V), or the due process of law clause (sec. 27, Art. III). Counsel's contention is that the fourth section of the Act subjects the beneficiaries of the estates of decedents who died since April 1, 1921, where the estates remained undistributed on March 5, 1923, to an unfair and arbitrary discrimination; that by that section a particular class of persons are singled out and burdens imposed upon them not general in application; and that it authorizes the taking of property without due process of law. Many cases are cited bearing generally on the requirement of equal protection of the laws and due process of law, but in our opinion they are without application. There is no express provision of our state Constitution requiring equal protection of the laws. However, the state is bound to observe the requirement of equal protection of the laws to citizens of the United States within its jurisdiction, as commanded by the federal Constitution. (Sec. 1, Art. XIV.) We can see no merit in the respondent's position, for by the Act it applies generally and equally to all estates remaining undistributed where the decedents have died since April 1, 1921. Had no date been definitely established by the Act, no one would be heard to contend reasonably that it is not within the right of the sovereign to impose a tax on all estates of decedents remaining undistributed. The fixing of a definite date does not change the situation, as the Act is of equal application to all estates of deceased persons who died since April 1, 1921, *whose estates remain undistributed.*

The Act itself makes a distinction between primary and secondary beneficiaries, thus classifying them and imposing different burdens; as to this, no objection is urged, and were such contention made, it would be dismissed as wholly lacking merit. If the legislature may constitutionally make such distinctions, then why may it not as reasonably classify estates subject to the tax? To merely ask the question prompts immediate affirmative response.

The right of succession is not inherent and the government may or may not permit it; so that when the privilege is [4, 5] granted, such conditions may be imposed as may appear desirable; and a law regulating succession of estates may prescribe such terms as the legislature may deem appropriate. Under our system such a statute is unobjectionable, provided it is made applicable to all in like situation. Our statute is of general application. The beneficiary of an estate has no claim by right of blood or otherwise to the estate of a decedent, except as the law gives it to him. The state has a right to take all of a decedent's property or to impose such taxes or conditions on distributive shares as it deems proper. Such being the case, there can be no possible objection to the state declaring, as it did in this instance, that an inheritance tax shall be imposed on the beneficiaries of "all estates *remaining undistributed* of decedents who died since April 1, 1921." "The legislature has power to declare that the tax shall accrue at any time while the law retains control of a decedent's property and so may retroactively be applied to estates still in process of distribution, though the owner died prior to the statute, on the theory that the tax is on the right to receive and may be imposed on the legatee's interest at any time before he actually receives the property. (*Cahen* v. *Brewster*, 203 U. S. 543, 8 Ann. Cas. 215, 51 L. Ed. 310, 27 Sup. Ct. Rep. 174 [see, also, Rose's U. S. Notes] ; *Ferry* v. *Campbell*, 110 Iowa, 290, 299, 81 N. W. 604; *Gelsthorpe* v. *Furnell*, 20 Mont.

299, 51 Pac. 267.)''   (Gleason & Otis on Inheritance Taxation, 2d ed., p. 39.)

This court, speaking through Mr. Justice Hunt, as early as 1897, declared the rule, and we see no sufficient reason to depart from it: ''Now, clearly, it is not obnoxious to the Constitution to lay a tax on the right to take, even where such right is vested while the estate is subject to the control of the district court to ascertain the exact value of the right, and the possession of an executor for purposes of administration. It is this important restriction to the vested right which respondent seems to have overlooked in the case. The acts of administration are conservatory means directed by the state to ascertain those vested rights. But, although vested, the rights of the legatees 'are subordinate to the conditions, formalities, and administrative control prescribed by the state in the interests of its public order, and are irrevocably established upon its abdication of this control at the period of distribution.' (*Carpenter* v. *Commonwealth,* 17 How. (U. S.) 456, 15 L. Ed. 127 [see, also, Rose's U. S. Notes]; *Succession of Oyon,* 6 Rob. (La.) 504; *Succession of Deyraud,* 9 Rob. (La.) 357.)'' (*Gelsthorpe* v. *Furnell,* 20 Mont. 299, 39 L. R. A. 170, 51 Pac. 267.)

''Nor is there anything in the federal or state Constitutions which prevents the state, during this period of administration and control, from imposing and collecting the tax upon the vested right to receive, before the legatee actually received under a decree of distribution. The interests vested only in the manner and upon the conditions authorized by the laws of the state (*Prevost* v. *Greeneaux,* 19 How. 1); and the imposition of an inheritance tax, though made as a condition for the taking of the inheritance after the right to take was vested, yet before the taking, does not impair the value of the right in any greater manner than the imposition of a rate of taxation greater after an interest vested, than before, would impair the value of the property itself.'' (*Gelsthorpe* v. *Furnell,* 20 Mont. 299, 39 L. R. A. 170, 51 Pac. 267.)

In *In re Tuohy's Estate*, 35 Mont. 431, 90 Pac. 170, it appeared that Mr. Tuohy died testate in October, 1893. The administration of his estate was not yet completed when the Inheritance Tax Law of 1897 went into effect. This Act applied to *all estates remaining undistributed* at the time the law took effect. (Sec. 7751, Rev. Codes 1907.) In June, 1906, the court, under the provisions of the Act, appointed an appraiser to ascertain the value of the inheritance tax due from the estate. The estate, which was largely mining property, had greatly increased in value between the date when the Act took effect and the date of distribution. The tax due on March 4, 1897, the date when the Act took effect, was $339, while the tax on the increase between that date and the date of distribution was $6,700. It was held that the estate was not only liable for the tax, but for the increase in value as well. Speaking through Mr. Chief Justice Brantly, this court said: "Since the tax is imposed upon the privilege of receiving or taking property, and not upon the property itself, and since the privilege is itself not a natural right, but a creature of law, it follows as a corollary that, except so far as it is clearly restricted by the Constitution, the legislature may impose such burdens upon it as it may see fit. The legislature is not restricted in this regard by the provision of the Constitution requiring equality and uniformity in the levy of ordinary taxes upon property (Const., Art. XII, secs. 1, 11); nor, for the same reason, is its power restricted by the provision prescribing a maximum rate for state taxation; * * * nor, again, by the provision, invoked here, fixing the valuation of a certain class of property or those providing for exemptions."

Our Constitution requires that taxes shall be levied and [6] collected by general laws and for public purposes only, and that they shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax. (Sec. 11, Art. XII.) This provision, however, relates alone to property taxes, and not to such as are imposed on inheritances.

"The Constitutions of most of the states require equality and uniformity in taxation; but these provisions are held to apply only to property taxes, and not to inheritance taxation. (*Booth* v. *Commonwealth,* 130 Ky. 88, 33 L. R. A. (n. s.) 592, 113 S. W. 61; *Tyson* v. *State,* 28 Md. 577; *Beals* v. *State,* 139 Wis. 544, 121 N. W. 347; *Dixon* v. *Ricketts,* 26 Utah, 215, 72 Pac. 947; *State* v. *Alston,* 94 Tenn. 674, 28 L. R. A. 178, 30 S. W. 750; *Thompson* v. *Kidder,* 74 N. H. 89, 12 Ann. Cas. 948, 65 Atl. 392.)    The reason for this rule is clearly stated by the United States supreme court as follows: 'The constitutionality of inheritance taxes is based on two principles: (1) An inheritance tax is not one on property, but one on succession.    (2) The right to take property by devise or descent is the creature of the law, and not a natural right—a privilege, and therefore the authority which confers it may impose conditions upon it.    From these principles it is deduced that the states may tax the privilege, discriminate between relatives, and between these and strangers, and grant exemptions, and are not precluded from this power by the provisions of the respective state Constitutions requiring uniformity and equality of taxation.' "    (*Magoun* v. *Illinois Trust & Sav. Bank,* 170 U. S. 283, 287, 42 L. Ed. 1037, 18 Sup. Ct. Rep. 594 [see, also, Rose's U. S. Notes].)

"The rule is subject to this limitation: As to inheritance taxes the legislature may make classifications, unequal and not uniform as between the classes, but both equal and uniform as to members of the same class.    (*Nunnemacher* v. *State,* 129 Wis. 190, 108 N. W. 627.)"    (Gleason & Otis on Inheritance Taxation, 2d ed., pp. 41, 42.)

Judge Cooley, in his work on Constitutional Limitations, says: "There is no doubt of the right of the legislature to pass statutes which reach back to and change or modify the effect of prior transactions, provided retroactive laws are not forbidden *eo nomine,* by the state Constitution, and provided

further that no other objection exists to them than their retro-active character.''

In the absence of express constitutional inhibition, the enact-ment of retrospective income tax laws have quite generally been upheld by the courts. (See annotation to *Smith* v. *Dirckx,* 283 Mo. 188, 11 A. L. R. 518, 223 S. W. 104; *People ex rel. Stafford* v. *Travis,* 231 N. Y. 339, 15 A. L. R. 1319, and notes, 132 N. E. 109.)   It is clear that the legislature intended that the new enactment should relate back to the effective date of the first Act, so as to include from such date the estates of deceased persons remaining undistributed.   (Act 1921, secs. 10377–10400, Rev. Codes 1921, specially repealed by section 26 of the Act of 1923.)

We have no special constitutional limitation prohibiting retro-active legislation (save section 13 of Article XV, which has no application), and in the absence thereof the Act in question must be sustained.   Our Codes recognize retroactive legislation, when, as with the statute before us, it is expressly so declared. (Sec. 3, Rev. Codes 1921.)

The district court of Silver Bow county and the judges thereof are hereby ordered and directed to annul and set aside the order of that court entered on February 16, 1924, denying the relator's petition for the appointment of a special appraiser of the value of the estate of James A. Murray, deceased, to determine the amount of inheritance taxes due from such estate to the state of Montana.

*Writ issued.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, HOLLOWAY and STARK concur.

Rehearing denied May 8, 1924.