[No. 25411. *En Banc.* September 19, 1935.]

*In the Matter of the Estate of* MARY FOTHERINGHAM,
*Deceased.*

THE STATE OF WASHINGTON, *Respondent,* v. B. H.
FOTHERINGHAM, *as Executor, Appellant.*[1]

*D. R. Glasgow,* for appellant.

*William H. Pemberton, John M. Boyle, Jr.,* and
*Henry Russell,* for respondent.

*Hamblen, Gilbert & Brooke, amicus curiae.*

[1] Reported in 49 P. (2d) 480.

STEINERT, J.—This is an appeal by the executor of a decedent's estate from an order increasing, for inheritance tax purposes, the valuation of the assets of the estate.

Mary Fotheringham died testate on February 1, 1932. Her executor, who is the appellant here, filed an inventory of the estate, upon which an appraisement was made by three duly appointed appraisers. According to the appraisement, the real estate was valued at $91,780 and the personal property at $12,750, or a total of $104,530.

The state of Washington, through its supervisor of inheritance tax and escheat division, respondent here, filed exceptions to the appraisement, claiming that the appraisement was too low. The exceptions are based upon the following allegations: That the *assessed* valuation of the real estate for the year 1932 was $59,520; that the ratio of assessed values to market values of real property for that year, in Spokane county, was 44%; that, computed upon that ratio, the *true* value of the real estate here involved was, for inheritance tax purposes, $134,135; that the appraised value of the personal property was $12,750; and that the total value of the estate, for inheritance tax purposes, was $146,885. It will be observed that this computation results in an increase of $42,355 in the valuation of the real estate and, consequently, of the total estate.

Issue was joined upon the state's exceptions, and after a hearing, the court entered an order sustaining the exceptions and increasing the valuation of the assets of the estate, for inheritance tax purposes, by the sum of $42,355. From that order, this appeal was taken.

The question that is now presented comes to us through a rather peculiar and uncommon set of cir-

cumstances, owing to successive changes in the law with respect to appraisement and valuation of decedents' estates for inheritance tax purposes.

Immediately prior to 1931, the law upon that subject was contained in Rem. Comp. Stat., § 11211, as amended by chapter 205, Laws of 1929, p. 530, § 3 (Rem. Rev. Stat., § 11211 [P. C. § 7062]). Section 3 of the act of 1929, so far as it is material here, reads as follows:

"The superior court, having jurisdiction, shall appoint three suitable, disinterested persons to appraise the estate and effects of deceased persons for inheritance tax purposes, and unless otherwise provided by order of the court, the appraisers appointed under the probate law to appraise the estate and effects of deceased persons shall be and constitute the appraisers under the provisions of this act. . . . The supervisor of the inheritance tax and escheat division or any person interested in the estate appraised, may file exceptions to the appraisement, which shall be heard and determined by the court having jurisdiction in probate of the estate involved. If, upon the hearing, the court finds the amount at which the property is appraised is its market value and the appraisement was fairly and in good faith made, it shall approve such appraisement; but if it finds that the appraisement was made at a greater or less sum than the market value of the property, or that the same was not fairly or in good faith made, it shall set aside the appraisement and determine such value. The supervisor of the inheritance tax and escheat division, or any one interested in the property appraised, may appeal to the supreme court from the order of the superior court in the premises."

It will be observed that, by this section of the 1929 act, the estates and effects of deceased persons were to be appraised at their *market* value, upon appraisements made fairly and in good faith.

In 1931, the legislature passed chapter 134, Laws of 1931, p. 401, amending various sections, including § 3

of the 1929 act. Section 7, p. 406, of the 1931 act provides:

"That section 11211 of Remington's Compiled Statutes as amended by section 3, chapter 205 of the Laws of 1929, be amended by adding thereto a new section to be known as section 11211-a, to read as follows:

"Section 11211-a. The market value of all real estate and the improvements thereon, of the estate of a deceased person, for the purpose of computing the inheritance tax, shall be the value of such real estate and improvements, as fixed and determined by the county assessor, board of county equalization, state tax commission, or state board of equalization and the valuation fixed by the appraisers shall be based upon the ratio of the assessed valuation to the actual value of the property, as fixed by the state board of equalization as provided by law.

"The executor, administrator or trustee, in preparing the inventory in all probate cases shall insert, at the right of each real estate tract, the assessed valuation of such tract as hereinbefore determined and also the assessed valuation of the improvements thereon."

The body of this section appears as Rem. Rev. Stat., § 11211-a [P. C. § 7062-1].

It will be observed here that, while by the 1929 act the appraisers were required to determine the *market* value upon their own appraisement, fairly and in good faith, the 1931 act prescribed that the market value of real estate and the improvements thereon should be based upon the *assessed* value thereof according to the ratio employed by the taxing officials. To that extent, the powers and duties of the appraisers of an estate were circumscribed and limited. The later act peremptorily fixed the basis upon which the market value of real estate and improvements thereon was to be determined by the appraisers.

The lower court upheld the validity of the 1931 act and upon that basis sustained the state's exceptions to

the appraisement and increased the valuations of the estate proportionately.

The question before this court, at the time that the appeal was taken, was whether Rem. Rev. Stat., § 11211-a [P. C. § 7062-1], above quoted, was mandatory and controlling upon the appraisers in determining the value of real estate. Upon that question, the case was argued on February 20, 1935. After submission of the cause, the legislature, on March 25, 1935, passed chapter 180, Laws of 1935, p. 707 (Rem. 1935 Sup., § 8370-1 *et seq.*), which is a general revenue act. That act contained an emergency clause and became effective immediately.

Sections 104 to 127, inclusive, of the act relate to inheritance taxes. Section 106, p. 770 (Rem. 1935 Sup., § 11202), sets forth a complete schedule of rates to be charged, which are materially in excess of the rates theretofore obtaining. Sections 113 and 123, pp. 783 and 790 (Rem. 1935 Sup., §§ 11211 and 1465), provide, among other things, for appraisement of the estates and effects of deceased persons at their market value by three appraisers appointed by the court. These two sections restored the law in that respect substantially as it existed prior to the passage of Rem. Rev. Stat., § 11211-a [P. C. § 7062-1], *supra.* Section 114, p. 784 (Rem. 1935 Sup., § 11211-a), specifically amended Rem. Rev. Stat., § 11211-a, and provided that all real estate and improvements thereon, of the estate of a deceased person, should, for the purpose of computing the inheritance tax, be valued and appraised at the fair *market* value thereof on the day of the death of the decedent owner. Section 115, p. 784 (Rem. 1935 Sup., § 11211-b), relates to inheritance taxes to be paid on the proceeds of insurance policies.

Section 124, p. 791 (Rem. 1935 Sup., § 11211-e), reads as follows:

"The provisions of the title [of chapter 180], except section 115, shall apply to all cases pending in the inheritance tax and escheat division and to all cases pending in any of the courts of this state, whether on appeal or otherwise, at the time this act takes effect, whether the death of the decedent occurred prior to the passage of this act or subsequent thereto: *Provided, however,* That the inheritance tax now due before the passage of this act may be paid under the law effective immediately before the passage of this act if paid within ten months from the time this law becomes effective: *Provided, further,* That if a portion of the inheritance tax is paid in any estate now pending within the ten months as herein provided, then the increased rates under this title shall apply only upon the proportionate part of such estate remaining unpaid."

This court having been advised of the change in the law, and the case not having then yet been decided, we called for a re-argument. Upon the second argument, the question presented was whether or not the 1935 act had any effect upon the case at bar, and, if so, to what extent. The question arises principally out of § 124, above quoted.

The language of that section itself is very explicit in three respects: (1) That the provisions of the act, except § 115, shall apply to *all* cases pending on March 25, 1935, in the inheritance tax and escheat division or in any of the courts of this state, whether on appeal or otherwise, and whether the death of the decedent occurred prior to the above date or subsequent thereto; (2) that the inheritance tax due before the passage of the act may be paid under the law effective immediately prior thereto, if paid within ten months after March 25, 1935; and (3) that, if any portion of the inheritance tax in any pending estate be paid within the ten months, then the increased rates provided in § 106 shall apply only to the proportionate part of the estate for which the tax remains unpaid.

In view of the clear and explicit language of § 124, there can be no question as to its meaning or effect, if the section be held to be valid. It is apparent that the section is retrospective in its view and retroactive in its effect. The only question, then, is whether the section is unconstitutional because of its being retroactive.

In considering this feature of the law, it is necessary to keep in mind two fundamental principles pertaining to inheritance taxes: (1) That an inheritance tax is not a tax on property, but is an excise or impost laid upon the privilege of receiving property by inheritance; it is a tax on the right or privilege of succession. *State v. Clark,* 30 Wash. 439, 71 Pac. 20 ; *In re White's Estate,* 42 Wash. 360, 84 Pac. 831; *In re Stixrud's Estate,* 58 Wash. 339, 109 Pac. 343, 33 L. R. A. (N. S.) 632; *In re Corbin's Estate,* 107 Wash. 424, 181 Pac. 910, 7 A. L. R. 685; *In re Ferrel's Estate,* 112 Wash. 231, 192 Pac. 10, 11 A. L. R. 820; *In re Ferguson's Estate,* 113 Wash. 598, 194 Pac. 771, 13 A. L. R. 122; *In re Ellis' Estate,* 169 Wash. 581, 14 P. (2d) 37, 86 A. L. R. 734; Ross on Inheritance Taxation, pp. 4, 5, §§ 4 and 5; Gleason & Otis, Inheritance Taxation (4th ed.), p. 247, § 7.

(2) That, the right of inheritance being a privilege, and not an inherent right, the authority which confers it, namely, the legislature, may impose any conditions thereto that it sees fit. Stated in another way, the state's power over property subject to inheritance is plenary. *In re Ferrel's Estate,* 112 Wash. 231, 192 Pac. 10, 11 A. L. R. 820; *In re Sherwood's Estate,* 122 Wash. 648, 211 Pac. 734; *United States v. Perkins,* 163 U. S. 625, 16 S. Ct. 1073, 41 L. Ed. 287; *Magoun v. Illinois Trust & Savings Bank,* 170 U. S. 283, 18 S. Ct. 594, 42 L. Ed. 1037; *Plummer v. Coler,* 178 U. S. 115, 20 S. Ct. 829, 44 L. Ed. 998.

We come, then, to the determinative question,

namely, whether the retroactivity of an inheritance tax statute renders it unconstitutional as to estates pending at the time of its passage. That there is some difference of judicial opinion upon the question, must be conceded. The weight of authority and the better reasoning, however, are, in our opinion, to the effect that an inheritance tax statute operating retroactively, when the statute clearly expresses the intent to so operate, is not unconstitutional.

It is undoubtedly the rule in this state that retroactive statutes are generally regarded with disfavor, and unless it clearly appears that such was the legislative intent, the court will not give the statute a retroactive effect, where to do so would impair existing rights. *Bruenn v. North Yakima School Dist. No. 7,* 101 Wash. 374, 172 Pac. 569.

But neither of the conditions upon which that rule rests is present here. In the first place, the legislature has clearly expressed its intent that the statute shall operate retroactively. In the second place, the statute does not impair existing rights of the legatees and devisees, because what rights they have are subject to the right of the state to impose inheritance taxes. The absolute power of the state in such matters is emphatically expressed in *In re Sherwood's Estate,* 122 Wash. 648, 211 Pac. 734, as follows:

"The right of the owner of property to direct what disposition shall be made of it after his death is not a natural right which follows from mere ownership. On the contrary, the right has its sanction in the laws of the state having jurisdiction over the person of the donor or jurisdiction over the property. The state may, if it so chooses, take to itself the whole of such property, or it may take any part thereof less than the whole and direct the disposition of the remainder; and this without regard to the wishes or direction of the person who died possessed of it, and without regard to the claims of those to whom he has directed that it be

given. Stated in another way, the state's power over such property is plenary, and its right to direct its disposition unlimited. It follows from this that those claiming the property must find the foundation for their claim, in the laws of the state. They can have no claim superior to that which such laws give them.''

As stated in *United States v. Perkins*, 163 U. S. 625, 16 S. Ct. 1073, 41 L. Ed. 287:

''Certainly, if it be true that the right of testamentary disposition is purely statutory, the state has a right to require a contribution to the public treasury before the bequest shall take effect. Thus the tax is not upon the property, in the ordinary sense of the term, but upon the right to dispose of it, and it is not until it has yielded its contribution to the State that it becomes the property of the legatee.''

In a Louisiana case entitled *Succession of Levy*, 115 La. 377, 39 So. 37, 8 L. R. A. (N. S.) 1180, a testator had died May 26, 1904, leaving a large estate consisting of real and personal property. Thereafter, and before the estate had been finally closed, the legislature passed an inheritance tax act, under which the tax collector sought to collect a tax from the estate. An attack was made upon the statute on the ground that it was retroactive. The court said:

''The right was not absolutely vested in the heirs, free from all possible taxation; and in consequence the alleged retroactivity of the law, even if retroactive, could be of no avail as a defense against the tax.''

That case ultimately found its way to the United States supreme court in *Cahen v. Brewster*, 203 U. S. 543, 27 S. Ct. 174, where an attack was made against the statute on the ground that it violated the fourteenth amendment of the United States Constitution. In affirming the decision of the state court, the court of final resort said, with reference to the power of the state to impose the tax:

"It may select the moment of death, or it may exercise its power during any of the time it holds the property from the legatee."

In Gleason & Otis, Inheritance Taxation, (4th ed.), p. 276, it is said:

"The Legislature has power to declare that the tax shall accrue at any time while the law retains control of a decedent's property and so may retroactively be applied to estates still in process of distribution, though the owner died prior to the statute, on the theory that the tax is on the right to receive and may be imposed on the legatee's interest at any time before he actually receives the property."

Without encumbering this opinion with further quotation, we cite the following authorities as substantiating the rule that mere retroactivity of an inheritance tax statute does not render it unconstitutional: *Gelsthorpe v. Furnell*, 20 Mont. 299, 51 Pac. 267, 39 L. R. A. 170; *State ex rel. Rankin v. District Court*, 70 Mont. 322, 225 Pac. 804; *Stevens v. Bradford*, 185 Mass. 439, 70 N. E. 425; *Attorney General v. Stone*, 209 Mass. 186, 95 N. E. 395; *Carpenter v. Pennsylvania*, 58 U. S. 456, 15 L. Ed. 127; *Milliken v. United States*, 283 U. S. 15, 51 S. Ct. 324, 75 L. Ed. 809; *O'Shaughnessy v. Commissioner of Internal Revenue*, 60 F. (2d) 235; 12 C. J. 1091; 26 R. C. L., p. 206, § 176; Ross on Inheritance Taxation, p. 55, § 37.

The right of inheritance is subject to the right of the state to fix the amount of inheritance taxes to be paid.

The legislature having the power, and, pursuant thereto, having explicitly declared its intention, to pass an inheritance tax law which should have a retroactive effect, it only remains to give effect to what the legislature has prescribed.

We therefore conclude, just as § 124 of the 1935 act says, (1) that the act, with the exception of § 115, ap-

plies to *all* cases pending on March 25, 1935, in the inheritance tax and escheat division or in any of the courts in this state, whether on appeal or otherwise, and whether the death of the decedent occurred prior or subsequent to that time; (2) that, in all such cases, the inheritance tax which became and was due on March 25, 1935, may be paid under the law effective immediately before that date, if paid before January 25, 1936; and (3) that, if a portion of the inheritance tax in any pending estate, as above defined, is paid before January 25, 1936, then the increased rate as prescribed by § 106 of the act shall apply only to the proportionate part of the estate upon which the tax remains unpaid.

As has already been intimated, the lower court based its order upon the law as it existed at that time. In doing so, the court acted correctly. However, since the taking of the appeal, the law has been changed, and the change is made to operate retroactively. Hence, the court's order cannot now stand.

Reversed, with direction to the court to proceed further and in accordance with the views herein expressed.

ALL CONCUR.