[No. 26489. Department One. May 7, 1937.]

*In the Matter of the Estate of* CARRIE C. BUTTON,
*Deceased.*

HAZEL McKINSTRY, *Individually and as Executrix, Appellant,* v. THE STATE OF WASHINGTON, *by William
H. Pemberton, Supervisor of the State Inheritance Tax and Escheat Division,
Respondent.*[1]

[1]Reported in 67 P. (2d) 876.

334

*Lundin, Barto & Devin,* for appellant.

*William H. Pemberton* and *Charles Snyder,* for respondent.

GERAGHTY, J.—The issue raised by this appeal is the applicability of the inheritance tax statute to a gift made by Carrie C. Button to Helen McKinstry, the appellant.

In 1926, Mrs. Button, then eighty-four years of age, removed from her home in Illinois to Seattle. From the time of her removal there until her death, she lived with her niece, Hazel McKinstry. Mrs. McKinstry and ten brothers, children of a deceased sister, were Mrs. Button's sole living blood relatives. In 1928, she transferred her entire property, securities of the value of seventy thousand dollars, to Seattle and, later in the year, executed an agreement, under the terms of which the Seattle National Bank, of Seattle, was to hold the property in trust, the income and so much of the principal as was necessary for her use to be paid to her and any balance remaining at her death to be divided ratably between her niece and nephews. She reserved the power to alter or revoke the trust.

In September, 1931, Mrs. Button executed a written modification of the trust, making Mrs. McKinstry sole beneficiary at her death. In September, 1932, she revoked the trust and, on the same day, executed an instrument conveying all of her property to Mrs. McKinstry. Mrs. McKinstry thereupon took the securities from the bank and placed them to her credit in the Pacific National Bank, of Seattle, and thereafter exercised all the rights of property over them. Subsequently, on November 22, 1932, Mrs. Button executed a will, reciting that she had already given all of her property to Mrs. McKinstry and that, if she died possessed of any other property, she desired it to go to her niece. She died December 21, 1933, fifteen months after making the gift, being then ninety-one years of age.

The will made by Mrs. Button was not offered for probate until after a petition for letters of administration had been filed by Harold Lewis, brother of Mrs. McKinstry, on February 20, 1935. Thereupon the will was filed in court and, on July 19th, duly admitted to probate.

On March 9, 1936, the supervisor of the inheritance tax and escheat division filed in the estate of Carrie C. Button his findings, reciting the death of Mrs. Button leaving property taxable under the inheritance tax laws of the state of Washington of the value of seventy thousand dollars, passing to Mrs. McKinstry, and finding the property so passing taxable in the sum of $13,250, to which interest, at the rate of eight per cent from the date of death, amounting to $2,340.82, was to be added for non-payment, making, in all, $15,590.82, for which amount he sought judgment against the beneficiary and a lien against the assets of the estate of Mrs. Button.

The appellant filed formal objections to the findings

of the supervisor, alleging that no tax was due because, at the time of her death, Mrs. Button was possessed of no property in the state of Washington or elsewhere, having before her death conveyed all her property to Mrs. McKinstry, and that the conveyance was not made in contemplation of death. The objections also challenged the validity of the statute under which it was sought to tax the gift. It was further objected that the state was, by its acts and omissions, estopped from claiming the tax set forth in the findings, or of any amount above the tax due the state, if any, under the law in effect upon the death of Mrs. Button.

After a hearing on the findings of the supervisor and the objections of the appellant, the court made an order dismissing the exceptions and finding that the gift was taxable as having been made in contemplation of death; that the tax was to be computed at the rate provided in chapter 180 of the 1935 Session Laws and amounted, with interest, to $15,590.82, less $1,700 on account of allowable deductions, leaving a net amount due of $13,890.82. In this amount was included the sum of $2,340.82 as interest from the date of Mrs. Button's death to the date of the entry of the order. The appeal is taken from this order.

The errors assigned by the appellant are grouped under five heads. We will discuss these in the order in which they are presented in the brief.

It is first urged that the evidence does not establish that the conveyance to the appellant in September, 1932, was a gift in contemplation of death.

Rem. Rev. Stat. (Sup.), § 11201 [P. C. § 7030-164] (Laws of 1935, p. 768, § 104), imposes a tax upon all property within the jurisdiction of the state which shall pass "by deed, grant, sale or gift made in contemplation of death of the grantor or donor." Section

11201-a [P. C. § 7051-1] provides that any transfer made by a decedent within two years prior to death, without a valid and adequate consideration therefor, shall be presumed to have been made in contemplation of death.

That there was no adequate consideration for the gift under consideration here, would seem not to admit of question. The transfer recites that the gift was made in consideration of love and affection and for the donee's better maintenance, support, protection and livelihood. The aunt had paid Mrs. McKinstry fifty dollars a month during the first four years of her residence with her and thereafter one hundred dollars a month until the date of the gift. Doubtless, this was considered adequate compensation for the services rendered.

The transfer, having been made without adequate consideration, was taxable if made in contemplation of death. As we have said in other cases, the statute does not define the term "made in contemplation of death." In *In re Carvill's Estate*, 181 Wash. 627, 44 P. (2d) 768, 47 P. (2d) 825, we quoted with approval the definition given in *Armstrong v. State ex rel. Klaus*, 72 Ind. App. 303, 120 N. E. 717, as follows:

"The words 'in contemplation of death,' as used in the inheritance tax statutes, do not refer to that general expectation of death entertained by all persons, but they do refer to that expectation of death which arises from such bodily or mental conditions, irrespective of the cause in any particular case, which prompts persons to dispose of their property to those they deem entitled to their bounty."

This definition has been incorporated into the Federal regulations. *Milliken v. United States*, 283 U. S. 15, 51 S. Ct. 324.

The gift, having been made within two years before death, is presumed, under the statute quoted above,

to have been made in contemplation of death. The burden of showing that it was not so made rested upon the appellant. The trial court reached the conclusion that she had not sustained the burden. We agree with the court in this conclusion.

The record is somewhat voluminous, much of it having relation to the mental condition of Mrs. Button at and before the gift was made. Her mental capacity is not in question; indeed, in the contest over the will executed by her sometime after making the gift, the court found her mentally competent. She came of a long-lived family and made frequent reference to the fact that her mother had lived to be ninety-seven years old. As she advanced in years, she became more dependent upon the services of others and much of her business was done by the appellant. Latterly she became blind, partially deaf, and suffered from arthritis and bladder trouble.

Whether or not a gift is made in contemplation of death, is a question of fact dependent upon the circumstances of the individual case. Advanced age is not alone decisive of the question, although it is an element to be considered. The record shows that Mrs. Button was conscious of her increasing infirmities and of her slight hold on life. When she called Mr. Neterer, a bank officer, to assist her in preparing the instrument of gift to her niece, she said,

"Will you draw up the papers? I am an old lady and I might die in my sleep tomorrow, and I want to get this fixed before I pass away."

It is of significance, in weighing the circumstances, that Mrs. Button disposed of everything she possessed, rendering herself thereafter dependent on her niece. This is not consistent with the thought that she looked forward to a prolongation of her life. Another circumstance tending to disclose the state of her mind

is the fact of her making a will shortly after the gift. True, the will refers to the gift and recites that the will was made to cover any property thereafter coming into her possession, but the prospect of acquiring any additional property was remote, if not impossible. Having divested herself of everything, she had no means of accumulating additional wealth by investment, and her own relatives, other than Mrs. McKinstry, were impecunious nephews, from whom she could expect nothing, and who had annoyed her in the past by frequent calls for help. It is fairly to be inferred that the will was made as an after-thought, to make doubly sure that upon her death the appellant would possess her property.

■ The appellant's next contention is that the gift is not taxable under chapter 180 of the 1935 Session Laws, p. 706, which materially increased the rate of taxation over the rate in force at the time of the donor's death. Section 124 of chapter 180, p. 791, so far as material, is as follows:

"The provisions of the title, except section 11211b, shall apply to all cases pending in the inheritance tax and escheat division and to all cases pending in any of the courts of this state, whether on appeal or otherwise, at the time this act takes effect, whether the death of the decedent occurred prior to the passage of this act or subsequent thereto: *Provided, however,* That the inheritance tax now due before the passage of this act may be paid under the law effective immediately before the passage of this act if paid within ten months from the time this law becomes effective: . . ." (Rem. Rev. Stat. (Sup.), § 11211-e [P. C. § 7030-184].)

The appellant contends that the retroactive provisions of this section are not operative in this case; first, because it was not a case pending at the time the act became effective; and, second, if given retroactive

effect in its application here, § 124 is unconstitutional and void as an attempt to tax rights already vested.

The contention that there was no pending case is answered by the record, disclosing the fact, to which reference has already been made, that, on February 20, 1935, an application was filed in the superior court for letters of administration on the estate of Carrie C. Button. On March 20th, the will of Mrs. Button was filed by the appellant, with a petition for its probate. Chapter 180 carried an emergency clause making it effective upon its approval by the governor. It was approved March 25, 1935. The case was then pending in court.

As a matter involved in a case pending at the time the 1935 act became effective, the gift is taxable at the higher rate provided in the act, unless the retroactive provision of § 124 is unconstitutional in its application to the gift, as being an effort to subject to the tax a right already vested.

In the case of *In re Fotheringham's Estate*, 183 Wash. 579, 49 P. (2d) 480, we held § 124 valid in its application to property possessed by a decedent at the time of his death. The court rested its conclusion on the principle that the legislature possesses the power to declare that the tax shall accrue at any time while the law retains control of a decedent's property, and so may apply the law retroactively to estates still in process of distribution, though the owner died prior to enactment of the statute, on the theory that the tax is on the right to receive and may be enforced on the legatee's interest at any time before he actually receives the property.

The appellant argues that, since the gift had been made prior to the 1935 act and completely vested in the donee, the principle upon which the retroactive

statute was sustained in the *Fotheringham* case is not applicable.

The tax is not one on a simple gift but on a transfer made in contemplation of death, having the characteristic of a testamentary disposition. In discussing the considerations of policy which sustain the tax on such gifts, the supreme court of the United States, in *Milliken v. United States, supra,* states that the gifts are motivated by the same considerations as lead to testamentary dispositions of property, and made as substitutes for such dispositions without awaiting death, when transfers by will or inheritance become effective, and that underlying the statute is the policy of taxing such gifts equally with testamentary dispositions, for which they may be substituted, and the prevention of the evasion of estate taxes by gifts made before, but in contemplation of, death. The court characterized the law as an enactment in aid of, and an integral part of, the legislative scheme of taxation of transfers at death; and so it held that inclusion of gifts made in contemplation of death in a single class with decedents' estates to secure equality of taxation, and prevent evasion of estate taxes, is a permissible classification of an appropriate subject of taxation.

In that case the facts were that, while the 1916 Federal revenue law was in force, a gift of property was made by a donor to his children. The donor died March 5, 1920, after the effective date of the 1918 act. The commissioner of internal revenue included the gift in decedent's estate as having been made in contemplation of death and assessed and collected the tax, measured by the 1918 act, which was higher than the rate under the 1916 act, when the gift was made. The tax was paid and suit was brought to recover the excess. It was contended that, since title to the gift vested while the 1916 rates were effective, the 1918

rates could not be applied retroactively to the gift. Speaking of this contention, the court said:

"Hence, in challenging the present tax it does not suffice to say that the gift antedated the statute. It is necessary to consider the nature of the tax and of the decedent's gift. When the gift was made it was subject to the provisions of the 1916 Revenue Act. By it, Congress had adopted the well understood system of taxation of transfers of property at death, already in force in forty-two states. . . . A characteristic feature of the system was that incorporated in § § 202 (b) of the 1916 Act and 402 (c) of the 1918 Act, both of which imposed a tax on gifts made in contemplation of death, computed at the same value and rate as though the property given had been a part of the donor's estate passing at death. . . .

"The reasonableness of the present application of the increased rate of tax of the 1918 Act must be determined in the light of the legislative policy which the 1916 Act had established before the gift was made. Obviously that policy would be set at naught if gifts made in contemplation of death, after the 1916 Act, were to be taxed more favorably than transfers from the donor occurring at and by reason of his death. As was apparent when the 1916 Act was adopted, that policy could be made effective only if gifts made in contemplation of death, while that Act was in force, were to be subject at the donor's death to such rate as might at the time of that event be applicable to the transfer of the donor's estate. The decedent, when he made his gift, was as well warned that it might be taxed on that basis as he was that it would be so taxed if on that day he had made the same disposition of it by will. *A change in the rate applicable to transfers at death necessitates a corresponding change in the rate applicable to gifts made in contemplation of death, else the purpose in taxing the latter would not be attained. That purpose, as already indicated, was to put such gifts on the same plane as testamentary disposals.*" (Italics ours.)

It is to be noted that the facts in that case differ from the facts in the case at bar, in that there the rate applicable at the death of the donor was involved, while the higher tax here involved was passed subsequent to the donor's death. But this difference does not affect the principle at issue.

Having held in the *Fotheringham* case that the 1935 act was applicable to estates passing by death, the policy of subjecting gifts made in contemplation of death to the same burdens would justify the application of the 1935 rate to the gift, in accordance with the principle announced in the *Milliken* case,

". . . that the inclusion of this type of gifts in a single class with decedents' estates . . . is a permissible classification of an appropriate subject of taxation."

■ It is next contended that the retroactive provision found in § 124 is unconstitutional in that it is not referred to in the title of the act. So far as material to the issue, chapter 180 is entitled:

"An act relating to revenue and taxation . . . providing for the levy and collection of a tax on inheritances . . ."

Article II, § 19, of the state constitution provides that no bill shall embrace more than one subject, and that shall be expressed in the title.

In *In re Peterson's Estate*, 182 Wash. 29, 45 P. (2d) 45, we said:

"A title to an act may be as broad as the legislature sees fit to make it, and thereunder any specific legislation as to any subject relating to the general character thus broadly embraced in the title will be sustained."

An act entitled, "An act to establish a probate code," was held sufficient to cover the whole subject of law

usually administered in probate courts, wills, administration of estates, the descent and distribution of property, etc. 1 Lewis' Sutherland Statutory Construction (2d ed.), § 159. *Johnson v. Harrison,* 47 Minn. 575, 50 N. W. 923, 28 Am. St. 382.

Many of the authorities cited by appellant in support of her position are dependent upon their own facts. 59 Corpus Juris 808 is cited to the effect that the title should indicate that an act is retrospective. Two cases are cited in support of the text; one of them, *Katz v. Herrick,* 12 Idaho 1, 86 Pac. 873, is rather an authority in support of respondent's contention. Speaking for the court on rehearing, Judge Ailshie said:

"There is a vast difference between a general and comprehensive title that covers a general subject about which it is attempted to legislate, and which will, of course, embrace all incidental and ancillary matter proper or necessary to perfect the legislation and make it operative in all its parts, and a title referring to a general subject where the legislation does not touch that subject, but is merely and solely an incident of the subject. In this case the title gives notice that the legislation proposed concerns 'foreign corporations doing business in the state of Idaho,' but when we come to examine the actual legislation, we find that it has no reference to business that foreign corporations are either doing *in praesenti* or intending to do *in futuro,* nor does it even affect all foreign corporations. Its sole business is to cure and validate business transactions already consummated of that class of foreign corporations that have previously disregarded the constitution and the statutes of the state. Its object is to remove a disability from a class of foreign corporations that have transacted business under conditions and a state of facts that the constitution and statutes say they should not."

Here, the title is general and comprehensive, covering the subject of revenue and taxation in general and

the matter of the levy and collection of a tax on inheritances in particular. The title is broad enough to embrace all incidental and ancillary matters proper or necessary to perfect the legislation and make it operative in all its parts. Having the right to classify gifts made in contemplation of death with decedents' estates as an appropriate subject of taxation, any title sufficient to embrace all of the provisions of the act in relation to decedents' estates must be held equally sufficient to cover taxable gifts embraced in the same classification.

■ It is next contended by the appellant that it was error to charge the tax with interest from the date of the donor's death to the date of the entry of the order.

Rem. Rev. Stat., § 11210 [P. C. § 7061], provides:

"All taxes imposed by this act shall take effect and accrue upon the death of the decedent or donor. If such tax is not paid within fifteen months from the accruing thereof, interest shall be charged and collected at the rate of eight per centum per annum unless by reason of necessary litigation such tax cannot be determined and paid as herein provided, in which case interest at the rate of eight per centum per annum shall be charged upon such tax from and after the time the cause of such delay is removed. . . ."

In *In re Duncan's Estate,* 119 Wash. 426, 206 Pac. 1, the court construed the meaning of the term "necessary litigation." In that case, it was contended by the state that the litigation contemplated by the statute was such as, in some manner, affected the amount of the tax to be paid and prevented its computation, and it did not relate to litigation over the question whether the estate is or is not liable for payment of a tax. Rejecting this view, the court said:

"While the statute is somewhat indefinite, certainly, litigation brought to determine whether a tax is or is

not due from the estate as much prevents the computation and payment of the tax as does litigation brought to determine the amount due from the estate, and to so construe it is not to depart from its literal wording. Nor do we think the construction put upon the statute by the state correctly reflects the intent and purpose of the legislature. To so construe it is to give it a penal effect; it is to say that the legislature intended to impose a greater payment on the estate when the litigation concerning the amount of the tax was of one sort than it imposes when it is of another. Penalties for the non-payment of taxes when due are, of course, common and usual and are necessary to the protection of the state. But this is not a penalty of that sort, if the state's contention be correct. It is a penalty imposed for asserting a claimed right in the courts. It is needless to say that such penalties are not favored, even if they can be said to be in accord with public policy."

The court also said that litigation excusing payment of interest must, of course, under the terms of the statute, be necessary litigation. But all unsuccessful litigation disputing the right of the state to collect the tax cannot be considered unnecessary. When the person contesting the tax acts in good faith and upon reasonable grounds, he is not to be charged with instigating unnecessary litigation.

The appellant took the position from the beginning that the gift was not made in contemplation of death and was, therefore, not subject to a tax. Shortly after Mrs. Button's death, the inheritance tax and escheat division became aware of the fact and, in March, 1934, wrote a letter of inquiry to appellant's attorneys, when the division was advised of the appellant's claim that the gift was not taxable. No further steps were taken by the division until after the will contest, when the present proceeding was initiated.

We think this case falls within the rule announced in the *Duncan* case, and that a charge for interest prior

to the entry of the order should not have been made.

The final contention of the appellant that the tax was erroneously computed on the basis of seventy thousand dollars is without merit. The appellant in her brief admits that the stocks and bonds included in the gift were worth that sum. The tax was computed at the proper rate on this value, with allowance for proper deductions.

The cause is remanded to the superior court, with direction to modify its order by eliminating from the total amount found due the state, the sum of $2,340.82, included on account of interest, and, as so modified, the order be affirmed.

STEINERT, C. J., MAIN, and MILLARD, JJ., concur.

BLAKE, J. (dissenting)—I think the judgment should be affirmed *in toto*. Under the facts set out in the opinion, there was no reasonable basis for appellant's claim that the gift was not made in contemplation of death. Resistance to payment of the tax was not, in my opinion, "necessary litigation" under the rule of *In re Duncan's Estate*, 119 Wash. 426, 206 Pac. 1.